---

(No. 11735.—Reversed and remanded.)
WILLIAM MASON, Appellant, *vs.* LOUISA H. GRIFFITH *et al.*
Appellees.

*Opinion filed December 19, 1917.*

1. BILLS AND NOTES—*it is not fraud for holder of judgment note to enforce it as the law permits.*  The law permits the giving of notes with power of attorney to confess judgment at any time and enforces such contracts, and it cannot be regarded as fraud, for which a court of equity may cancel the judgment, for the holder of such a note to enforce it in the manner the law permits.

2. EVIDENCE—*consideration for installment notes may be shown by parol.*  Where there is no valid written agreement, carried out by the parties, as to the terms of the purchase of real property, which are the consideration for the giving of installment notes by the purchaser, oral evidence of the conversations and representations of the grantor and his agent as to such terms is admissible.

3. CONTRACTS—*failure to literally comply with terms of contract of purchase is not ground for rescission.*  Where a contract for the purchase of real property, requiring the grantor to complete the building on the premises in a certain manner, is substantially and in good faith performed by him, the contract cannot be rescinded for minor defects and omissions in doing the work, but the purchaser is entitled to credit for the expense of remedying the defects and supplying the omissions and for loss of rent occasioned thereby.

4. INTEREST—*when purchasers are not relieved from paying interest on mortgage notes.*  Where the mortgage notes given for the purchase price of land are to draw interest when the building is completed and turned over to the purchasers, if the building is substantially completed and turned over to the purchasers, who

continue to occupy it, they will not be relieved of the payment of interest because the specifications for the building have not been literally complied with.

5. MORTGAGES—*when there is no such default as authorizes fore-closure.* Where the purchase price of a building in process of construction is to be paid in monthly installments, and judgment notes, secured by mortgages, are given and made payable each month, there is no default in the payment of installments, such as authorizes a foreclosure, where the amount due when the bill is filed is less than the sum the purchasers are entitled to expend. to remedy the defects and supply omissions due to the failure of the mortgagee to complete the building according to his contract.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CAVENDER & KAISER, for appellant.

O'SHAUGHNESSY & O'SHAUGHNESSY, (LAWRENCE HARMON, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant filed a bill in the circuit court of Cook county to foreclose two mortgages given to secure a part of the purchase price of the mortgaged real estate. The defendants answered, and filed a cross-bill asking for the rescission of the contract of purchase of the premises in question on account of fraud. The cause was referred to a special commissioner, and on a hearing upon exceptions to his report a decree was rendered dismissing the bill for want of equity, setting aside the deed from the appellant to the appellees, ordering the mortgages released, the notes secured by them canceled and surrendered, setting aside a judgment which had been rendered on the notes, and again referring the cause to the commissioner to take further evidence as to damages sustained by the appellees, as alleged in their cross-bill. A freehold being involved, the complainant appealed to this court.

The appellees' cross-bill avers that they made an offer to exchange a building which Louisa H. Griffith owned for one of the appellant's buildings, which he rejected, and they then informed him that they had no money to pay down and could only make the purchase on monthly payments, and if they bought the building it was their purpose to live in one of the flats and rent the other; that he agreed to sell them the building upon monthly payments for $7000, $4000 being a first mortgage which they were to assume and $3000 payable in monthly installments; that the value of the lot and building, fully completed, was $6250, but for the privilege of paying the purchase price in monthly installments of $35 the appellees agreed to pay $750 more than the value of the premises; that the appellant stated that the building would be equipped with a heating plant that would use twelve tons of soft coal, only, and would be completed in a thorough and workmanlike manner; that screens would be furnished for all windows above the basement; that a refrigerator would be installed with proper drainage connections and that electric lights would be installed in the basement; that the appellees had no knowledge of the proper mode of constructing a steam-heating plant but relied on the representations of the appellant that the heating plant would be finished in a thorough and workmanlike manner and of an adequate capacity to heat the building; that appellant did not install an adequate heating plant, did not equip the building with screens, did not install ice-boxes with adequate drainage, did not place electric lights in the basement, and did not complete the construction of the building and point up the brickwork of said building in a thorough and workmanlike manner; that he did not furnish a sufficient roof for the building and sun parlor; that the roof at all times leaked, causing injury to the building; that the appellees had frequently requested the appellant to complete the building but he failed and refused to do so, and because of his neglect and default the appellees

had been unable to keep the second floor rented; that to properly complete the building and make necessary changes in a workmanlike manner the appellees expended the sum of $400; that the heating plant alone would cost $175 in addition, and by reason of the failure to complete the building they lost rentals of $35 a month from May 1, 1916. The cross-bill further avers that because of the appellant's promises they executed the notes in question; that the appellant fraudulently procured from the appellees eighty-five notes, with powers of attorney attached, providing for an attorney's fee of $10 on each note, with the fraudulent design of trying to force a situation whereby he could find a pretense or excuse to enter judgment on all the unpaid notes or force a pretended default; that he fraudulently refused to complete the building, to install screens, to put the roof in proper condition, to install proper ice-boxes and drainage and to put electric lights in the basement, and in carrying out his fraudulent design caused a judgment to be entered in the circuit court of Cook county upon seventy-three of the notes prior to the filing of his bill for foreclosure and caused an execution to be levied upon other property of Louisa H. Griffith, thus depriving the appellees of the benefit of the monthly payments for which they had paid the extra consideration. The appellees notified the appellant before the entry of the judgment that payments of the notes would be withheld until he completed the building according to his agreement, and they offered to re-convey the premises to the appellant provided he would discharge the indebtedness against the appellees and reimburse them for the expense they had been put to for work in and about the premises, including screening and inclosing of porches, filling the yard with black soil and planting shade trees, grass and shrubbery, to the value of $300. The appellees paid twelve of the notes, taxes on the premises and interest on the first mortgage, which payments they were willing to allow the appellant as compensation for the period of occupancy by

them and such rent as they had collected. The appellees represented that by reason of the fraudulent acts of the appellant they have a right to rescind the contract and re-convey the property and tender a re-conveyance upon such equitable terms as the court may direct, and they asked for a rescission of the contract and an accounting, or in case a foreclosure is entered, an account of damages they have sustained by reason of the appellant's default in his contract with them and a reduction in the purchase price of $750.

We shall not go into a detailed analysis of the evidence but shall state our conclusions from it. It appears from the record that the appellant in June, 1915, and before that time, had erected a number of similar flat-buildings in the same vicinity in the city of Chicago. The appellees purchased of the appellant one of these buildings which was in process of construction, and the appellant agreed to complete the building in a workmanlike manner the same as the other buildings, to permit the appellees to select their own electric light fixtures and to furnish screens for all windows above the basement, and represented that the heating plant was adequate to heat the two flats and that he would guarantee that it would do so. The building then had only one rough coat of plaster, but the appellant stated that it would be completed by the first of August. The appellees took possession of the building on August 16, 1915, though it was not then complete, and the workmen were at work in the building for a month after the appellees went into possession. There was a mortgage for $4000 on the property and the purchase price was $7000. For the $3000 difference the appellees executed eighty-five promissory notes, payable monthly, each for $35 except the last, which was for $60. The first thirty-six of these notes were secured by a mortgage and the remainder by another mortgage. These were the two mortgages sought to be foreclosed. The heating plant failed to heat satisfactorily the upper flat, and for this reason the tenant of the upper flat moved out in May,

1916. Screens were not furnished for eight windows above the basement, drainage pipes were not connected with the ice-boxes, the electric light fixtures in the basement were not furnished and the roof leaked. Appellees have lived in one of the flats ever since they took possession of the building and have rented the other except during the time that the tenant moved out on account of the failure to heat it satisfactorily. They paid the notes falling due monthly until July 19, 1916, when they refused to make any further payment because the appellant had failed to comply with his contract, the boiler and the roof had not been fixed and the paving assessment had not been paid. The notes executed by the appellees had powers of attorney attached authorizing confession of judgment, and on August 24, 1916, the appellant caused judgment to be entered upon all the unpaid notes for $3340.10, which included $30.10 interest and $730 attorney's fees. The mortgages authorized a foreclosure, at the option of the owner of the notes, for the whole indebtedness in case of non-payment of any of the notes, and for a failure to pay the notes falling due July 19, August 19 and September 19, 1916, the appellant on September 22, 1916, by virtue of this provision, filed his bill for the foreclosure of the mortgages.

The only finding of fact in the decree is "that the complainant, William Mason, was guilty of fraud as set forth in the defendants' answer to the original bill, and that said defendants have sustained the allegations of fraud contained in their cross-bill." The answer avers that the complainant wickedly, designedly and fraudulently procured the execution of the eighty-five notes with power of attorney to confess judgment, with the fraudulent design, intention and purpose of not completing the building as he had contracted to do and obtaining as many payments of the notes maturing month by month as he could to secure the largest amount of cash from the purchasers of the property without performing his contract to complete the building, and

when the time came that the purchasers would demand its
completion, to refuse, and, in case they did not meet the
notes next falling due, to have a pretended legal excuse to
declare all of said notes due and enter up judgment upon
all of the remaining notes, together with attorney's fees;
that in accordance with such design he neglected to com-
plete the building or to complete the heating plant, and left
it in such a condition that it was wholly inadequate to heat
the upper flat; that it required more coal than the appellant
had guaranteed it would take; that the tenant was com-
pelled to abandon the flat on May 1, 1916, because of the
inability of the appellees to furnish enough heat to make
the apartment habitable and comfortable, and for that rea-
son that flat remained vacant after May 1, 1916; that the
complainant had knowledge of the defective heating plant
and wholly neglected and refused to perform his contract
and render to the appellees a completely finished building;
that upon the payment of the twelfth note on June 19, 1916,
the appellees notified the appellant that they would not pay
the next note until he had performed his contract and fin-
ished the building in accordance with his agreement; that
the appellant, as a part of his fraudulent design and pur-
pose, refused to comply and neglected to comply with his
agreement, and for the purpose of carrying out his fraudu-
lent design caused a judgment to be confessed upon the
notes in the circuit court of Cook county for the balance
due, including $730 attorney's fees, amounting in the ag-
gregate to $3340.10.

If this pleading is to be regarded as charging a fraud
which would justify the rescission of the contract it is
not sustained by the evidence. The appellees moved into
the house and had been occupying it for more than eleven
months before default was made in any of the payments.
Their chief complaint was and is that the heating plant is
not properly constructed or adequate in size and that the
roof of the building is not sufficient. The heating plant is

defective. It fails to heat sufficiently the upper flat. There is a conflict in the evidence as to the cause of the trouble,— whether the size of the boiler, the location of the pipes, the amount of radiation or some other reason,—and a conflict in opinion as to the remedy,—whether by changes in the plant already installed or the installation of a new plant. But there is no evidence that the system was not installed in good faith to comply with the contract. In fact, the furnace was on the premises when they were sold. The roof was a four-ply tar-and-gravel roof, which the man who put it on testified was put on in a good, workmanlike manner. The other defects complained of are of comparatively minor importance, and the evidence in the record does not justify the conclusion that the appellant procured the execution of the judgment notes intending to refuse the performance of his contract, and thus induce the appellees to make default in the payment of their notes so as to furnish him an excuse for taking judgment on all the unpaid notes. Under the contract no default by the appellees was necessary to enable him to do so. The power of attorney authorized the confession of judgment on each of the notes at any time after its execution, and it would be a fantastic conclusion to draw that the appellant intended to refuse to perform his contract so as to cause a default to enable him to do a thing the doing of which was entirely within his discretion. The law permits the giving of notes with power of attorney to confess judgment at any time and enforces the contract. It cannot be regarded as a fraud for the holder of such a note to enforce it in the manner the law permits or a reason for a court of equity to cancel the judgment. The appellees executed the notes and mortgages with full knowledge of their contents. At any rate, they had the papers in their possession for seven or eight days before their execution, they could all read and they had an opportunity to know their contents. No attempt was made to conceal the character of the documents from them, and

the decree granting the relief prayed in the cross-bill can not be sustained. If the appellees are entitled to any relief in regard to the judgment they must obtain it in a court of law.

The appellees insist that evidence of representations and agreements of the appellant and his agent before the execution of the deeds and mortgages is not admissible, because, it is claimed, there was a written contract for the sale of the premises, which was performed by the execution of the deeds, the notes and mortgages, and that the contract witnessed by these documents cannot be varied by parol. At the first interview of the appellees with Frank A. Schmidt, the appellant's agent, the following document was signed:

"CHICAGO, ILL., *June 5, 1915.*

"Hugh A. Griffith and Samuel D. Griffith have this day purchased, and Wm. A. Mason, as agent for the owner, has sold, to be conveyed by a warranty deed, the premises known as the eighth home south of Wilson avenue, on Central Park avenue, for $7000, on the terms specified on the back hereof, subject to any taxes and assessments for ........ payable next year, and to any unpaid assessments under which the improvements have not been made, and to all leases now on the property. Said Hugh A. and Samuel D. Griffith have paid one and (no) dollars as earnest money, to be applied on the amount of said purchase when consummated. In case the title, upon examination, is found defective within ten days after the abstract is furnished for that purpose, then, unless the defect be cured within thirty days after written notice of the same to said agent or owner, the said earnest money shall be refunded. If the conditions of the sale are not complied with within ten days after a merchantable title is shown, said deposit may, at the option of said agent or owner, be forfeited as commissions and liquidated damages. Time is of the essence of this agreement. It is understood and agreed that this receipt shall in no manner be a lien on the premises hereinbefore described, and the recording of this receipt shall entirely void the same.

HUGH A. GRIFFITH,
SAMUEL D. GRIFFITH."

No terms are specified on the back. It does not identify any property. It is not signed by the appellant. It is signed by only two of the appellees. There was no attempt by either party to perform it, but negotiations were

afterward carried on by the appellant and his agent on the one hand and all three of the appellees on the other which resulted in the conveyance of the premises involved in this case to the three appellees and the execution of the notes and mortgages in controversy.  It is competent to show the consideration for the notes by parol, and oral evidence of the conversations and representations of the appellant and his agent was admissible for that purpose.  That consideration was not merely a conveyance of the real estate in the condition in which it then was, but, in addition, the appellant agreed to complete the building.  In regard to this part of his contract he stood in no different position from that of a contractor who undertakes to construct a building upon the land of another.  He was bound to perform the contract, though literal compliance with the specifications was not necessary to a recovery by him.  A substantial performance in good faith was sufficient, but the necessary expense of performing the work according to the requirements of the contract should be deducted from the amount due him.  (*Keeler* v. *Herr*, 157 Ill. 57; *Evans* v. *Howell*, 211 id. 85; *Concord Apartment House Co.* v. *O'Brien*, 228 id. 360.)  There was a substantial compliance with the contract on the part of the appellant, though not a full and literal compliance in the matter of the heating plant, the roof, the screens, the electric light fixtures and the ice-box drainage.

The master reported as set-offs due the appellees, $375 for the cost of a new heating plant, $62.50 for the cost of a new roof, $175 for five months' rent of the upper apartment lost on account of the lack of heat, $131.04 interest paid by the appellees to the appellant on the mortgages, $106.52 for a special assessment on the premises, and $102 for work done by the appellees which the appellant should have done.  The appellant agreed, in writing, that the trust deed should not bear interest until the building was completed and turned over to the appellees.  The building was

turned over to them on August 16, 1915, but they insist that it never has been completed and therefore they were under no obligation to pay interest. As we have held that the building was substantially completed and as the defendants have continued to occupy it, they are not relieved from payment of interest according to the terms of the notes. They are not entitled to any credit for the amount of the special assessment, for it is not yet due and they have not paid it. They are not entitled to the cost of a new heating plant and the cost of a new roof. What they are entitled to is the cost of making the changes and repairs necessary to put the roof in proper condition and make the heating plant satisfactorily heat the whole building. They are also entitled to the cost of furnishing the screens which were not furnished, making the drainage connections with the ice-boxes, and the loss of rent, if any, on account of the failure of the heating plant, for such time as was reasonably necessary to enable them to change the heating plant so as to properly heat the building. We find the amount of these items to be $350. This amount exceeds the amount of the three notes which were due, together with the interest when the bill was filed. There was no default, and therefore the appellant was not authorized to foreclose the mortgages.

The decree will be reversed and the cause remanded, with directions to dismiss the bill because there was no default in the conditions of the mortgages when the bill was filed, to dismiss the cross-bill so far as it seeks a rescission of the contract of purchase, the re-conveyance of the property and the cancellation of the mortgages, and to render a decree in favor of the appellees for the difference between $350 and the amount due on the mortgages when the bill was filed.          *Reversed and remanded, with directions.*