WATSON LUMBER COMPANY, Plaintiff, v. LLOYD MOUSER et al., Defendants-Appellees.—(LEO KAMADULSKI et al., Defendants-Appellants.)

(No. 74-50;

Fifth District—July 10, 1975.

Irvin Slate, Jr., of Lueders, Robertson and Konzen, of Granite City, for appellants.

Dailey & Walker, of Granite City, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This cause is an appeal by the defendant-purchasers, Leo Kamadulski and Fannie Kamadulski, from a portion of an order entered by the circuit court of Madison County denying the relief requested by plaintiff's, Watson Lumber Company's, complaint, granting the "cross complaint [sic]" of the defendant-contractor, Lloyd Mouser, against the defendant-purchasers and defendant-sellers, Charles Klann and Clara Klann, and denying the amended counterclaim of the defendant-purchasers against the defendant-contractor.

The following facts are undisputed. The defendant-sellers, Klann (hereinafter referred to as "sellers"), contracted to sell an unimproved parcel of real estate to the defendant-purchasers, Kamadulski (herein-

after referred to as "purchasers"). The purchasers entered into an oral contract for the construction of a house on this parcel with the defendant-contractor, Mouser (hereinafter referred to as "contractor"). The contractor began construction of the house, however, he left the project prior to its completion. The house was completed by the purchasers. The purchasers paid the contractor $5000 in cash and the contractor gave the purchasers a credit on the contract price in the amount of $11,896.25 for work performed for contractor by purchasers (including a prior judgment for work performed). After the house was completed the plaintiff, Watson Lumber Company, from whom the contractor and purchasers had purchased much of the material used in construction of the house, filed a materialman's lien against the contractor and the purchasers.

Subsequently, plaintiff filed suit to foreclose the materialman's lien. The plaintiff named as defendants the purchasers, the sellers, and the contractor. The purchasers and the sellers each filed an answer to the plaintiff's action and a counterclaim against the contractor for indemnification. The contractor filed an answer and, in addition, filed a pleading entitled "Cross-Complaint" against the purchasers and the sellers on the oral contract for construction of the house. The purchasers and the sellers each filed an answer to "Cross-Complaint" of the contractor. The purchasers, alone, filed an amended counterclaim against the contractor for damages caused by his alleged breach of the oral construction contract. The contractor answered the purchasers amended counterclaim and in his "Reply to the Answer to Cross-Complaint" denied "each and every affirmative allegation set forth" in the sellers and the purchasers answer to his "Cross-Complaint."

The trial court was then called upon to hear evidence and arguments concerning each of the aforementioned pleadings. At the close of the plaintiff's case, the trial court entertained and granted the purchasers' and the sellers' motion for a directed verdict with respect to the plaintiff's foreclosure action. No appeal has been perfected from this order. After the trial court heard the arguments and received the evidence proffered by each of the defendants, it entered a "Decree" finding: (1) that the contractor was indebted to the plaintiff in the amount of $5234.74 for materials used in the construction of the house; (2) that the purchasers owed the contractor $28,025 on the oral contract and $5,749.78 for "extras" on the contract, less a credit to the purchasers of $24,055.30, leaving a balance due of $9,719.48; (3) that the purchasers "should take nothing by their Amended Counterclaim"; and (4) that the contractor was entitled to a mechanic's lien on the property to the extent of $9,719.48. In the second portion of its "Decree" the trial court ordered: (1) that the purchasers pay the contractor the sum of $9,719.48; (2) that in the

event such payment was not made, the property should be sold at public auction; (3) that the contractor should be paid from the proceeds of such sale; and (4) that the contractor pay the plaintiff $5,237.74 out of the monies he was to receive from the purchasers. While the trial court did not enter any specific findings or orders on the sellers' counterclaim or on the contractor's "Cross-Complaint [sic]" against the sellers, the effect of those portions of the "Decree" ordering the property sold if the purchasers failed to comply with the order to pay the contractor was to rule against the sellers because they owned the underlying fee subject to their contract for sale with the purchasers.

A notice of appeal was filed in the trial court by the plaintiff; however, the record discloses that the plaintiff has failed to take any action to further pursue such appeal. A notice of appeal was also filed by the purchasers. This appeal only concerned those portions of the trial court's "Decree" which were entered to the detriment of the purchasers. It is this appeal that is presently before this court.

No question is raised on the pleadings on this appeal. We note, however, that there is no pleading in Illinois properly denominated a "Cross-Complaint." Ill. Rev. Stat., ch. 10, par. 38(1).

The first issue to be resolved on this appeal concerns the question of what, if any, liabilities exist under the terms of the building construction contract between the contractor and the purchasers. Both the contractor and the purchasers agree that they entered into an oral contract for the construction of purchasers' house. Nor is there any dispute that oral contracts between parties are valid in Illinois provided, as in the instant case, they are not barred by the Statute of Frauds. (*Case International Co. v. American National Bank & Trust Co.,* 18 Ill.App.3d 297, 309 N.E.2d 750; *Morris v. Anderson,* 121 Ill.App.2d 169, 259 N.E.2d 601; *C. Iber & Sons, Inc. v. Grimmett,* 108 Ill.App.2d 443, 248 N.E.2d 131.) It is, instead, the terms of this oral contract that the parties dispute. In the instant case the contractor alleges that in addition to the oral terms of the contract there were written plans and specifications, in the form of blueprints and amended blueprints of another house, which were incorporated into this contract. Notwithstanding this incorporation, if true, in Illinois, such a contract partly in writing and partly in parol is considered to be an oral contract. *Railway Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Loomis,* 142 Ill. 560, 32 N.E. 424; *Bank of Marion v. Robert "Chick" Fritz, Inc.,* 9 Ill.App.3d 102, 291 N.E.2d 836; *Wielander v. Henrich,* 64 Ill.App.2d 228, 211 N.E.2d 775; *Bertlee Co. v. Illinois Publishing & Printing Co.,* 320 Ill.App. 490, 52 N.E.2d 47.

The contractor testified that the agreed contract price was $29,500 while the purchasers testified that the agreed contract price was $29,000.

The trial court's "Decree" found that "* * * there is due and owing on the verbal contract the sum of * * * ($28,025.00) * * *." The trial court made no finding as to the agreed contract price. The trial court also found "[t]hat the said verbal contract was performed or substantially performed * * *." The record herein is devoid of any evidence which would support the trial court's figure as the agreed contract price, and it, therefore, is our conclusion that the trial court's figure represents an abatement in the full contract price reflecting a credit to the purchasers for the contractor's failure to fully perform. Thus, that portion of the trial court's finding "[t]hat the said verbal contract was performed or substantially performed * * *" is here reversed insofar as it finds full performance, as that finding is against the entire weight of the evidence. We are left with the finding of substantial performance.

As we discussed in the case of *Watson Lumber Co. v. Guennewig,* 79 Ill.App.2d 377, 397, 226 N.E.2d 270:

"Under the common law, one seeking recovery on a contract, had to prove literal performance of his promises in order to hold the opposite party to his promise to pay. This was particularly harsh in building and construction cases because literal performance in every detail is unlikely. Moreover, labor and materials expended upon an owner's land could not be returned to the contractor if the owner avoided the contract. It was therefore held, and became the rule in Equity, that if the owner got substantially the thing for which he bargained, he must pay for it * * *."

Originally the doctrine of substantial performance held that:

"A substantial performance, in good faith, is sufficient. As was said in *Sinclair v. Talmadge,* 35 Barb. 602: 'If there has been no willful departure from the terms of the contract, or omission in essential points, and the laborer has honestly and faithfully performed the contract in all its material and substantial particulars, he will not be held to have forfeited his right to remuneration by reason of mere technical, inadvertent or unimportant omissions or defects. The law imposes no such liability and enforces no such penalty.' *Glacius v. Black,* 50 N.Y. 145, is to the same effect * * *." (*Keeler v. Herr,* 157 Ill. 57, 60, 41 N.E. 750.)

Also see *Palmer v. Meriden Britannia Co.,* 188 Ill. 508, 59 N.E. 247; *Mason v. Griffith,* 281 Ill. 246, 118 N.E. 18; *Shepherd v. Mills,* 70 Ill.App. 72, *aff'd,* 173 Ill. 223, 50 N.E. 709; *School Directors v. Roberson,* 65 Ill. App. 298; *Cook v. American Luxfer Prism Co.,* 93 Ill.App. 299, for the same enunciation of the strict requirements of substantial performance of the work required under the contract and strict good faith on the part of the contractor. However, where there was performance by the con-

tractor, substantial or otherwise, but a lack of good faith, recovery under the doctrine of substantial performance did not lie and the contractor, to recover anything, was required to sue under a theory of *quantum meruit;* and abandonment of a project was held to vitiate good faith. *George Thompson & Son Co. v. Holtzer-Cabot Electric Co.,* 184 Ill.App. 475, 76 A.L.R.2d 805 (abstract opinion).

■■ The doctrine of substantial performance as it has emerged from its early enunciation has continued to be limited in application to those factual situations where there has been both substantial performance of the work required under the contract and good faith on the part of the contractor. As was held in *Broncata v. Timbercrest Estates, Inc.,* 100 Ill.App.2d 49, 52, 241 N.E.2d 569:

> " 'It is sufficient that there is a substantial performance in good faith or that there is an honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential points of the contract.' "

It is true that in these days of million- and multimillion-dollar building and construction contracts the parties may specifically contract between themselves for a different standard, one that would allow a contractor the possibility of some recovery even where he could not recover under the doctrine of substantial performance. (*Robinhorne Construction Corp. v. Snyder,* 113 Ill.App.2d 288, 251 N.E.2d 641, *aff'd,* 47 Ill.2d 349, 265 N.E.2d 670.) However, where, as here, the contract contains no such agreement between the parties, the doctrine of substantial performance yet retains its pristine qualities: substantial performance of the work required by the contract and a good-faith performance of the essential points of the contract. *Robinhorne Construction Corp. v. Snyder,* 113 Ill.App.2d 288, 297-98, 215 N.E.2d 641, *aff'd,* 47 Ill.2d 349, 265 N.E.2d 670; *Ehard v. Pistakee Builders, Inc.,* 111 Ill.App.2d 227, 234, 250 N.E.2d 1; *Ross v. Danter Associates, Inc.,* 102 Ill.App.2d 354, 369, 242 N.E.2d 330.

The essential points of this contract were twofold: construction of a house and payment. The contractor testified that at the time he left the project the house was habitable and able to be moved into with only a few doors to be hung and some trim or finish work to be completed. The purchasers testified that at the time the contractor left the project the house was not habitable. An employee of the purchasers who worked on the house for approximately 6 weeks testified that the house "* * * was ¾ finished, maybe a little more * * *" when the contractor left. The employee also, however, testified that the unfinished work was "* * * just a matter of finishing the house out to be lived in." There was also some evidence that the purchasers had ordered the contractor to cease his work on the project. The trial court necessarily found both

substantial performance and good faith on the part of the contractor because it entered an order in his favor and against the purchasers on the contractor's pleadings. This court is of the opinion that the record is sufficient on its face to support a finding of a willful departure from, or omission of, an essential point of this contract, *i.e.*, the construction of a house, by the contractor. However, because of the conflict in the evidence and because this court is not of the opinion that a contractor's abandonment of a project is in all circumstances per se bad faith, we cannot find from this record that the trial court's judgment for contractor, against purchasers, is against the manifest weight of the evidence required for a recovery under the doctrine of substantial performance. The sellers have not perfected an appeal. As has been stated most recently in *Marcano v. Chicago Transit Authority*, 22 Ill.App.3d 427, 431, 318 N.E.2d 81:

> "In close cases where findings of fact must necessarily be dictated to a large extent by impressions of credibility received by the trial judge from his observation of the witnesses, it is particularly true that an appellate court may not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. (*Hunter v. DeMay*, 124 Ill.App.2d 429, 259 N.E.2d 291)."

■■ The trial court also found "[t]hat the defendants, Leo Kamadulski and Fannie Kamadulski, should take nothing by their Amended Counterclaim." That amended counterclaim alleged that the contractor had not fully performed the contract, alleged credits for labor, materials and services required to complete the contract in the amount of $18,000; and prayed judgment for the amount of monies expended by purchasers in excess of the balance due under the contract. The doctrine of substantial performance when it is applied, as here, not only allows a contractor to recover but requires that a purchaser receive credits. As we said in *Watson Lumber Company:*

> "* * * if the owner got substantially the thing for which he had bargained, he must pay for it, but he was allowed a credit as compensation for the deficiencies existing in what he got as compared to what strict performance would have given him." (79 Ill.App.2d 377, 397.)

Also see *Broncata* and the other cited cases dealing with the doctrine of substantial performance for enunciation of this rule. The purchasers should, therefore, take something by their amended counterclaim (a credit) and that portion of the trial court's "decree" to the contrary is reversed.

The second issue to be resolved on this appeal concerns the question

of the proper measure of damages to be awarded where the doctrine of substantial performance is applicable. Various statements of this rule are current in Illinois. For example, it was held in *Ross v. Danter Associates, Inc.,* 102 Ill.App.2d 354, 370, 242 N.E.2d 330, that:

> "The rule with respect to the measure of damages is, we believe, properly stated by defendant, namely the "* * * difference between the cost of constructing, by contract, the building the contractor agreed to put up, and the fair cost market price of erecting such building.' Bertram v. Berquist, 153 Ill.App. 43; see also Schuyler County v. Missouri Bridge & Iron Co., 256 Ill. 348, 100 N.E. 239."

This court has stated this rule in *Watson Lumber Company v. Guennewig:*

> "Thus, in 'Substantial Performance' recovery there should be deductions from the contract price by an amount necessary to account for the difference between what the owner got by the actual performance as compared to what he bargained for. Keeler v. Herr, 157 Ill. 57, 41 N.E. 750. Bloomington Hotel Co. v. Garthwait, 227 Ill. 613, 81 N.E. 714, and it is not proper to fix the amount of recovery at the value of the building to the owner. Booher v. Williams, 341 Ill.App. 504, 95 N.E.2d 518." 79 Ill.App.2d 377, 397-98.

Before discussing how this measure of damages applies in this cause we note that the measure of damages used in such cases as *Broncata v. Timbercrest Estates, Inc.,* where a dollar-amount credit for each specific deficiency was given to the purchasers does not solely apply. There the purchasers had paid the entire contract price and the contractor had completed the project wherein deficiencies subsequently appeared. Nor does the measure used in cases such as *Ehard v. Pistakee Builders, Inc.,* solely apply. There the contract contained an express agreement that the contractor would correct defects and the measure of damages was the cost of such correction when the contractor refused to make them. Likewise the measure is not that set forth in such cases as *Watson v. Auburn Iron Works, Inc.,* 23 Ill.App.3d 265, 318 N.E.2d 508, where the contractor was awarded his expenses and the profit he would have received with a specific performance because there the owner had wrongfully prevented the contractor from performing.

The roots of the various enunciations of the applicable rule on damages set forth in *Ross* and *Watson Lumber Company* are clearly set out in the older cases such as *Mason v. Griffith,* 281 Ill. 246, 255, 118 N.E. 18, where it is stated:

"A substantial performance in good faith was sufficient, but the necessary expense of performing the work according to the requirements of the contract should be deducted from the amount due him. ( *Keeler v. Herr*, 157 Ill. 57; *Evans v. Howell*, 211 *id.* 85; *Concord Apartment House Co. v. O'Brien*, 228 *id.* 360. )"

Also see *Bloomington Hotel Co. v. Garthwait*, 227 Ill. 613, 81 N.E. 714, and *Palmer v. Meriden Britannia Co.*, 188 Ill. 508, 59 N.E. 247, for the same proposition on this question.

Applying this measure of damages to the case at hand there must first be a finding as to the agreed contract price. There must then be a finding as to the items of the project which were incomplete or defective when the contractor left the project. Next, there must be a finding of the amount purchasers spent for labor and materials, after the contractor left, to complete the project according to the specifications of the contract. That amount is the proper credit against the agreed contract price to purchasers. The briefs do not suggest and the record is insufficient to show the purchasers guilty of any conduct that prohibited contractor from full performance. Thus, in the event that the credit due purchasers is larger than the difference between the agreed contract price and the amount already paid, in cash and services, then the contractor, who failed to perform, will be liable for the excess.

The purchasers claim $17,007.11 in payments for materials used in the house's construction. They also claim an unspecified amount for payments made to three laborers they provided to work on this house. The payments for materials and the payments for labor were made both prior to and after the contractor left the project. The record is barren of any agreement between the contractor and purchasers to give the purchasers payment or credit for their contribution of these materials or services. Thus, the materials and services provided prior to the contractor's abandonment were purely voluntary and, as a matter of hornbook law, are not to be compensated or given credit. The amount purchasers spent, after the contractor left, for materials and labor is properly a credit to the extent it was used to conform the structure to the contract specifications. Exhibits were introduced by purchasers before the trial court in the form of bills, cancelled checks and cash receipts reflecting the amounts purchasers spent for materials and labor. Those exhibits are not included in the record on this appeal and we cannot, therefore, ascertain which of these payments are properly included in the credit and which are not.

Considerable dispute exists between the contractor and the purchasers on the question of whether the contract included a provision requiring the purchasers to furnish a part-time laborer to contractor. This point is moot. Assuming this provision was not part of the contract, purchasers

still could not recover their payments to laborers prior to the contractor's abandonment as they were acting as mere volunteers. And assuming the contrary, that this provision was a part of the contract, nonetheless purchasers should receive credit for payments to laborers after the contractor left because at that point the contractor's performance ceased and purchasers were no longer under an obligation to provide a part-time laborer.

■■ The final issue to be resolved on this appeal concerns the question of alleged "extras" on this contract. The trial court found that the purchasers owed the contractor "* * * ($5749.28) for extra services performed over and above said original contract * * *." This is exactly the amount claimed by the contractor. The law in Illinois applicable to the subject of extras is specifically, if not extensively, enunciated. In the recent case of *Bulley & Andrews, Inc. v. Symons Corp.*, 25 Ill.App.3d 696, 699-700, 323 N.E.2d 806, it is held:

> "For a contractor to recover additional compensation from an owner for extra work, the contractor must prove the essential elements of his case as set forth in *Watson Lumber Co. v. Guennewig* (1967), 79 Ill.App.2d 377, 226 N.E.2d 270. The contract must establish that (a) the work was outside the scope of his contract promises, (b) the extra work items were ordered by the owner, (c) the owner agreed to pay extra, either by his words or conduct, (d) the extras were not furnished by the contract [*sic*] as his voluntary act, and (e) the extra items were not rendered necessary by any fault of the contractor."

The contractor testified that the house to be built for the purchasers was to be "just like" another house already under construction. Contractor testified that he had blueprints of that other house which at the inception of the contract represented the agreed-upon houseplan. Also, on that exhibit appear red lines, writing and figures, placed there by contractor, and which, according to his testimony, represent extras. These include, according to contractor's testimony, an additional bath, an additional kitchen, a driveway, an overhanging roof, sealing on the overhang, round instead of square columns, brick instead of factory retaining walls, a rear retaining wall, storm windows and storm doors, a back door, basement windows, railings on the stairway, a bar, a furnace room, sliding dining room doors, an office room with a closet, two bedrooms with closets, back steps, an additional patio, air conditioning lines from the furnace to the septic tank and an enlargement of the house 2 feet in length. Contractor computed these extras in the amount of $5,749.78.

Purchasers testified that the additional kitchen, bath, two bedrooms, buried air conditioning lines, rear retaining wall and driveway were specifically part of the original contract; the round columns were agreed

extras at a total additional price of $75; the office was an agreed extra, at no set price, largely finished by purchasers; the furnace room was the result of a mistake made by the contractor in improperly locating the furnace in the middle of the living area; the brick retaining wall was an agreed extra at an additional price of $650; the additional 2-foot length of the house was the result of a mistake by the contractor, of which the purchasers had no knowledge. The purchasers testified that no other extras were ever agreed upon.

The red marks and drawings on the blueprint allegedly representing extras were added to the blueprints after the contractor had stopped work on the house. No written bill for extras was ever submitted, although contractor testified that purchasers knew how much was involved because Leo Kamadulski had "been around" contractor's projects for a number of years and, after the fact, because contractor orally advised purchasers when he stopped work on the house. Purchasers testified, and no evidence was presented in rebuttal, that they saw the blueprint for the first time at the trial.

The *Watson Lumber Co. v. Guennewig* case, at page 390, goes beyond the setting of the rule and discusses the evidentiary burden:

> "The proof that the items are extra, that the defendant ordered it as such, agreed to pay for it * * * must be by clear and convincing evidence. The burden of establishing these matters is properly the plaintiffs'. Evidence of general discussion cannot be said to supply all of these elements." (79 Ill.App.2d 377, 390.)

(Also see *Strom v. Lipschultz*, 5 Ill.App.3d 308, 311, 282 N.E.2d 257.) With regard to the substitution of round for square columns, the brick retaining wall and the office, the purchasers' own testimony clearly admits that these portions of the house were extras for which the contractor has a right to recover, that is, the evidence is clear and convincing on all five of the essential elements.

The contractor's figure for the columns is $380, $300 of which is allegedly due, as opposed to the purchasers' $75. No evidence was produced by purchasers to the effect that the contractor's figure was not the usual and customary differential between a number of 2 × 4's, of which square columns are constructed, and custom-made round columns. There are five columns on the house, and if, as contractor testified, each cost $75, the total figure would be very close to the figures testified to; and unrebutted, by contractor as the price of five such round columns. The preponderance of the evidence cannot thus be found to be against the contractor on this extra as the trial court is more properly the judge of this fact herein.

The figure for the brick retaining wall as presented by purchasers was

$650. Contractor does not suggest that this figure is improper. It is, therefore, accepted.

■■ The record is devoid of any figure for the office extra. No price was agreed upon, no price was individually quoted by either party, and this court is thus unable to determine a figure. Therefore, we must remand this case for a determination of the proper price of this admitted extra.

The contractor fails to offer any evidence to rebut the purchasers' testimony that the furnace was mistakenly located. Thus, even if the furnace room constitutes an extra, it is one rendered necessary by the fault of the contractor and may not, therefore, be recovered.

With regard to the numerous remaining extras claimed by the contractor, it is the opinion of this court that on this record it is manifestly against the weight of the evidence to find that the purchasers agreed to pay for such extras, either by word or conduct. The contractor does not offer any evidence of the specific time, place or nature of any conversation with, or conduct of, purchasers concerning these alleged extras. To the contrary, the evidence fails to disclose that the purchasers made any response at all to the floor plan as it was being implemented. If the floor plan, as implemented, was as radically different from the original contract as contractor would have us believe, we consider it inherently improbable that some specific acts or conversations by purchasers thereto appertaining would not have resulted. Such specific evidence is required for the recovery of extras, particularly where no formal bill for such alleged extras is ever submitted. In short, it was the contractor's burden to prove each and every element of each and every alleged extra by clear and convincing evidence. This he has here failed to do. As the contractor has failed in his burden on this essential element (the purchasers' agreement to pay for these extras by his words or conduct), it is unnecessary for this court to consider the application of the remaining four essential elements for recovery of an extra.

Numerous other provisions of the trial court's decree are appealed from; however, these provisions were not addressed in the briefs submitted to this court, nor were they addressed on oral argument. They will not, therefore, be addressed here.

In short summary: the finding of the trial court of substantial performance in good faith by the contractor is affirmed; the cause is remanded for a finding of the agreed contract price; the cause is remanded for a finding of the items of the project which were incomplete and defective when the contractor left the project; the cause is remanded for a finding of the proper credit to purchasers for the necessary expense after the contractor abandoned the project, of performing the work to the requirements of the contract; the cause is remanded for a finding of

the proper price of the office extra. The purchasers' credit should then be deducted from the agreed contract price; the price of the proper extras should then be added; finally, the purchasers' payments of $16,896.25 should be deducted. If the remaining sum is greater than -0-, that amount is due the contractor from the purchasers. If the remaining sum is less than -0-, the contractor must return monies represented by that figure to the purchasers.

Accordingly, the "decree" of the circuit court of Madison County is affirmed in part and reversed in part, and the cause is remanded with directions that the trial court determine the findings required and enter the appropriate order in a manner consistent with the views herein expressed.

Affirmed in part, reversed in part, and remanded with directions.

JONES, P. J., and CARTER, J., concur.