DELTA CONSTRUCTION, INC., Plaintiff-Appellant, *v.* PHIL DRESSLER, Indiv. and d/b/a Phil Dressler & Associates, *et al.*, Defendants-Appellees.

Third District   No. 78-13

Opinion filed October 18, 1978.

John B. Murnighan and L. Judson Todhunter, both of Green & Murnighan Associates, and Henry W. Sledz, of Lannon & Hegarty, both of Chicago, for appellant.

Thomas R. Wilson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Delta Construction, Inc. (hereinafter called Delta), appeals from an order of the Circuit Court of Will County granting defendant's motion for judgment at the close of the plaintiff's case.

From the record it is shown that Delta instituted an action against Phil Dressler, individually, and d/b/a Phil Dressler & Associates (hereinafter called Dressler), and, also, against Lockport Township Park District to recover moneys due it under a contract for the asphalt paving of tennis courts and a parking lot at the park district's racquet club.

Count I of the complaint alleged a contract with Dressler, the general contractor, in the amount of $53,824.19, which sum included moneys due on account of various items of extra work which were allegedly performed by Delta at Dressler's request. A second count of the complaint, against the park district and Dressler, was dismissed pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48) by reason of Delta's failure to bring the action within the period prescribed by statute. The park district was dismissed at that time from the proceeding and no appeal has been taken from the dismissal of that count.

A bench trial was held on count I and, after presentation of Delta's case, defendant Dressler moved, pursuant to section 64(3) (Ill. Rev. Stat. 1977, ch. 110, par. 64(3)), for a judgment at the close of plaintiff's evidence. The trial court granted the motion and dismissed the cause, stating that plaintiff had failed to prove a *prima facie* case. Appeal is taken from the order granting the motion and the consequent dismissal of the action instituted by Delta.

On appeal in this court, Delta contends that its evidence was sufficient to establish a *prima facie* case for the amount due on the contract and for the extras, and that the trial court's decision is contrary to the manifest weight of the evidence. We recognize, on the basis of established precedents, that section 64(3) of the Civil Practice Act provides that in ruling on the motion, the trial court shall weigh the evidence. As regards the duties of the trial court on a section 64(3) motion, the Illinois Supreme Court stated in *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399:

> "In ruling on the defendant's motion for judgment, therefore, the judge had the duty to pass on the credibility of the witnesses and consider the weight and quality of the evidence. In weighing the evidence, the court had the responsibility to consider all the evidence, including any favorable to the defendant."

Therefore, it is customary to state that a decision of a trial court on a motion such as the one with which we are concerned normally would not be disturbed unless it is contrary to the manifest weight of the evidence. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 58.) A reviewing court, however, must re-examine the evidence to determine whether the trial court, after weighing the evidence, erred in deciding that there was a failure to make a *prima facie* case. *Jackson v. Navik* (2d Dist. 1976), 37 Ill. App. 3d 88, 346 N.E.2d 116.

In analyzing the cause before us, we note that the record shows that Delta and Dressler entered into a written contract on August 18, 1975, by the terms of which Delta agreed to provide a stone base and an asphalt surface for indoor tennis courts at the racquet club, and to also provide a stone base and asphalt surface for the adjacent outdoor parking lot. The contract provided for lump sum payments of $35,358 and $13,230, respectively, upon completion of the paving. Construction on the tennis courts and parking lot began shortly after Dressler had accepted the contract on August 18, 1975. From the record, it is apparent that the first modification of the contract occurred shortly thereafter, according to James Lavan, Delta's estimator and chief negotiator with Dressler on the paving job. The original contract called for Delta to prepare the stone base for the tennis courts, but when Delta began work it found that a stone base had already been laid by another party. As a result, Lavan and Phil Dressler met to negotiate an appropriate adjustment to the contract. They agreed upon a lump sum credit to Dressler, in the amount of $9,500, by reason of Delta being relieved of providing the stone base as specified in the written contract. In conjunction with the credit agreed upon, Dressler agreed to an extra charge, on a time and materials basis, for necessary work by Delta in preparing the existing stone base for the asphalt covering. On the basis of the record as submitted, all negotiations

for this and subsequent modifications of the contract were conducted orally, although, according to Lavan's testimony, Dressler would sign all time sheets which reflected the extra work agreed upon by the parties. An invoice covering the modification concerning the stone base as well as the extra work involved in preparing the base was submitted by Delta to Dressler on August 29, 1976, and it was paid promptly.

Lavan further testified in the trial court, that, as work progressed on the job, other modifications in the contract were orally agreed upon between Delta and Dressler. Lavan stated that after Delta had completed its surfacing of the tennis courts, Dressler requested that Delta have its men help in the laying of the carpeting on the tennis courts, a job and work outside the original contract. Again, as stated by Lavan, Dressler agreed to pay on a time and material basis, as per original contract rates, for the extra work requested. Lavan testified to two other occasions when Dressler requested Delta to do work outside the contract on a time and material basis. Delta was requested to perform extra work in installing some culverts and backfilling some curbing which was not part of the original contract. Delta also worked with cleaning up some oil spillage on the tennis courts occasioned by the electrical subcontractor on the job, which it was requested to do by Dressler. Lavan stated that Dressler directed Delta to do the cleanup work, again on a time and material basis, since it was also outside the original scope of the contract between the parties. Lavan also testified that after each of the extra jobs were completed, Delta would have Dressler sign the time sheets on the extra work that had been done by Delta's crews. Lavan's testimony, concerning Dressler's request for work outside the contract and Dressler's agreement to pay on a time and material basis, stands uncontradicted in the record on appeal in this cause at this stage of the proceedings. The total amount alleged to be due, under the original contract, as modified to include the credit for the existing stone base, as well as the liabilities for the extras requested, was $53,824.19. Delta concedes that Dressler has paid $15,474.32 of that amount.

Plaintiff Delta finished its work on the job on October 21, 1975, and on October 27, 1975, it submitted its invoices to Dressler for the remainder claimed to be due under the contract and for the extras performed. The invoices concerning the extras were based, according to Lavan, on the time sheets signed by Dressler. About the time the invoices were sent, Dressler voiced the park district's objection to the appearance of the parking lot, for the reason that there were areas of discoloration which gave the lot a patched appearance. In response to this report, Delta applied a sealer on the entire parking lot and repainted its parking stripes. Objection was also made at that time to the poor drainage off the surface of the parking lot and Delta offered to apply a one-inch overlay on the

entire surface to cure that problem. No evidence was produced of any objections to the tennis court work and the paving job done on the tennis courts by Delta. With reference to the drainage problem on the parking lot, no action was taken on Delta's offer to overlay at Delta's expense. The invoices submitted to Dressler were not paid. Lavan testified that it would cost Delta approximately $2,000 to cure the drainage problem by laying the overlay coat of asphalt, which it offered to do at its expense, and not charged to Dressler.

● 1 The position of Delta is that there has been substantial performance as applied to the written contracts and that it has met the burden of proving a *prima facie* case which would justify a recovery. The doctrine invoked, as applied in construction and building cases, is discussed extensively in *Watson Lumber Co. v. Mouser* (5th Dist. 1975), 30 Ill. App. 3d 100, 104-08, 333 N.E.2d 19, and in *Watson Lumber Co. v. Guennewig* (5th Dist. 1967), 79 Ill. App. 2d 377, 226 N.E.2d 270. The modern formulation of the doctrine in Illinois allows recovery from a buyer where there has been substantial performance of a contract, even though there may be some omissions or defects in the contract's performance, as measured by the strict terms of the contract. To recover under a substantial performance theory:

> " 'It is sufficient that there is a substantial performance in good faith or that there is an honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential points of the contract.' " *Watson Lumber Co. v. Mouser,* 30 Ill. App. 3d 100, 105, quoting from *Broncata v. Timbercrest Estates, Inc.* (1st Dist. 1968), 100 Ill. App. 2d 49, 241 N.E.2d 569.

In substantial performance cases, the burden is on the contractor to establish the elements necessary to substantial performance recovery and, also, to show the amount he should recover. In typical cases, recovery will be the contract price reduced by the amount based upon the difference between what the owner got by actual performance as compared to what he bargained for. (*Watson Lumber Co. v. Guennewig* (5th Dist. 1967), 79 Ill. App. 2d 377, 397.) One measure of such recovery is outlined in *Watson Lumber Co. v. Mouser* where the court used the rule set out in *Mason v. Griffith* (1917), 281 Ill. 246, 255, 118 N.E. 18, that the "necessary expense of performing the work according to the requirements of the contract should be deducted from the amount due" to the contractor under the contract. (*Watson Lumber Co. v. Mouser* (5th Dist. 1975), 30 Ill. App. 3d 100, 108, 333 N.E.2d 19.) The plaintiff contends that it has met its burden of showing substantial performance of the contract in good faith. We find no basis in the record to disagree with plaintiff's contention.

In the instant case, as shown by the record, the facts establishing a

*prima facie* case for recovery were developed under the substantial performance theory. While we are conscious of a trial judge's duty to weigh the evidence, and are reluctant in most cases to reverse the trial court's determination on such issue, we have a duty to determine whether the evidence justifies a determination of a deficiency in this obligation by the trial court. Notably in this case, we find that the evidence produced by the plaintiff stands unimpeached and uncontradicted at this stage of the proceedings since no evidence was presented on behalf of the defendant. (See *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1st Dist. 1976), 39 Ill. App. 3d 1035, 1042, 351 N.E.2d 264.) As we have noted, the evidence presented by Delta shows that there was a contract entered into between Delta and Dressler that called for Delta to install asphalt paving on tennis courts and a parking lot belonging to the park district. The uncontradicted evidence is that the original contract for the paving work was orally modified a number of times after construction had begun, in order to meet contingencies that arose during construction.

As shown by the record, the modifications of the contract were agreed upon by Dressler, and Dressler in fact was to receive a credit on the original contract for work previously done on the stone base and Delta was to receive extra compensation for extra work performed by it at Dressler's request. The exact figures on the credit and the extras are contained in the invoices submitted to Dressler after completion of the work. According to evidence of plaintiff, the amount due for such extras was based on time sheets signed by Phil Dressler. Work on the tennis courts and the parking lot was completed by Delta in October 1975. According to Delta's evidence, substantial performance of its obligations under the contract as modified by subsequent oral agreements was completed. There was no evidence in the record indicating any willful departure from, or omission of, the essential parts of the contract. As to good faith on its part, the evidence shows that Delta agreed to perform extra work not called for under the contract in order to expedite the job and clean up problems created by others. The record indicates that when a problem did arise with Delta's own work, as with the patchwork appearance of the parking lot, Delta cooperated with Dressler in attempting to correct the problem. Delta applied a sealant to the entire parking lot and repainted the line markers to create a uniform appearance. Delta also offered to apply an asphalt overlay, at Delta's own expense, to cure the problem of standing water on the lot. Since such evidence stands uncontradicted, it clearly demonstrates Delta's good faith in its performance under the contract, as modified by oral agreement of the parties.

Defendant Dressler attempts to avoid application of the substantial performance doctrine by arguing that the work done was not done in

accordance with contract requirements. The actual evidence concerning objections by Dressler and the park district was confined to the problems previously mentioned in this opinion, *i.e.*, the patchwork appearance of the lot and the standing water on the lot. The patchwork appearance was apparently remedied by the application of the sealant and Delta offered to cure the other problem by applying the overlay of asphalt at its own expense. Lavan's testimony was that the correction of the problem with standing water would cost Delta approximately $2,000. Other than this problem, the evidence presented by Delta shows that its obligations under the contract as modified have been substantially performed and that Dressler received what Dressler bargained for. With respect to the quality of the work performed, paragraph 6(b) of the general conditions of the contract provides that all work "shall be considered accepted by Buyer ten (10) days after completion of said work unless Buyer notifies Paver to the contrary in writing before such time." Dressler was unable to elicit any evidence from plaintiff's witnesses that it had given written notice to Delta that it was not accepting the completed work.

■■■ With reference to the amount of damages, Lavan's testimony as to the cost ($2,000) of remedying the drainage problem constitutes competent evidence as to the amount that should be deducted from the amount of recovery under the terms of the contract as modified. (See *Watson Lumber Co. v. Mouser* (5th Dist. 1975), 30 Ill. App. 3d 100, 108, 333 N.E.2d 19.) Lavan's testimony, combined with the invoice amounts showing the amount due under the contract, was sufficient to satisfy Delta's burden of introducing evidence as to the amount it should recover under the substantial performance theory. Naturally, Dressler, upon remandment, will be able during the presentation of its evidence in defense, to show that the amount is incorrect and that a greater amount of expense will be involved in curing any defects.

We are aware of the fact that the trial court stated that Lavan's testimony as to the amount needed to complete the work was incompetent because it was too speculative. We do not agree with this analysis of Lavan's testimony. The record shows that Lavan had spent 20 years in the paving business and was an experienced estimator in the business. He was estimator on this project and had determined the costs to complete the entire project. He had negotiated the contract and modifications with Dressler. The evidence clearly establishes that he knew this project and the costs involved with respect thereto. He was clearly aware of the costs of labor and materials which would be necessary to lay a one-inch (1″) asphalt overlay over the parking lot to cure the standing water problem. When Lavan was asked how much the overlay would cost, he responded that he "would guess" the costs to be somewhere "in the neighborhood" of $2,000. In view of the evidence

concerning Lavan's expertise in the paving business and his intimate knowledge of the costs on this particular job, the focus on Lavan's choice of words in stating the $2,000 figure gives the wrong emphasis to the personal speaking style and diction and does not go to the substance of what Lavan was stating. As we view the evidence as presented, he was saying, in substance, that this was his estimate of the cost to Delta of doing that particular work. There was no evidence impeaching or contradicting the figure or Lavan's credentials as an estimator. We, therefore, conclude that Delta satisfied its burden of showing a *prima facie* case under the substantial performance theory.

■■ ■ Dressler makes additional arguments in an attempt to avoid contractual liability for the extra work requested by Dressler from Delta. Dressler argues that the work was not extra and that, even if it were, the contract only allowed modifications in writing signed by both parties. The requirements for recovery on extras were set out in *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1st Dist. 1977), 48 Ill. App. 3d 73, 77, 365 N.E.2d 360:

> "He [the contractor seeking recovery for extras] must establish that: (a) the work was outside the scope of his contract promises; (b) the extras were ordered by the owner; (c) the owner agreed to pay extra, either by his words or conduct; (d) the extras were not furnished by the contractor as his voluntary act; and (e) the extras were not rendered necessary by any default of the contractor."

The evidence introduced by plaintiff Delta satisfied its burden with regard to recovery on the extras. Lavan testified that the extra work billed in the invoices was requested by Dressler, in most cases personally by Phil Dressler himself. The evidence also shows that the extra work requested was outside the scope of the contract and that prior to doing it, there was an agreement between the parties that it would be done on a time and material basis at the rate specified in the contract. We find nothing in the evidence indicating that the extra work was necessitated by Delta's default in performance or that the work was performed voluntarily by Delta. According to the evidence in the record, Dressler requested the extra work and agreed to pay for it. Delta, pursuant to those oral agreements, then performed the extra work requested. Delta, therefore, satisfied the requirements for recovery on the extras. *Mayer Paving & Asphalt Co. v. C. A. Morse, Inc.* (1st Dist. 1977), 48 Ill. App. 3d 73, 77, 365 N.E.2d 360.

■■ Dressler also contends that Delta cannot recover for extras since the contract called for written modification only. It has long been recognized that such provisions in building contracts can be waived by the actions or words of the parties. As we stated in *Custom Builders, Inc. v. Clemons* (3d Dist. 1977), 52 Ill. App. 3d 399, 403, 367 N.E.2d 537:

"Generally, a condition that all extra work be performed only upon written orders can be waived orally by the owner, but before the contractor is entitled to compensation for such extras, the waiver must be proved by clear and convincing evidence." (See *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1st Dist. 1977), 48 Ill. App. 3d 73, 80, 365 N.E.2d 360.) The uncontradicted testimony of Lavan was that Dressler orally requested the extra work and agreed to the modifications of the contract without anything required in writing. Standing alone and uncontradicted, such evidence is sufficient to show a waiver. Further evidence is found in the fact that Dressler paid the original invoice submitted by Delta which was based, in part, on an oral modification of the contract calling for Dressler to receive a credit as well as payment for extra work. Consequently, we find that Delta met its burden of proving a *prima facie* case to recover under the substantial performance theory, and the decision of the circuit court granting the section 64(3) motion was against the manifest weight of the evidence at this stage of the trial proceedings.

The judgment of the circuit court of Will County granting defendant's motion for judgment at the close of plaintiff's evidence is reversed, and the cause is remanded for retrial.

Reversed and remanded.

STOUDER, P. J., and SCOTT, J., concur.