Narowetz Heating & Ventilating Company, an Illinois Corporation, Plaintiff-Appellee and Cross-Appellant, v. Solar Sales, Inc., an Illinois Corporation, and Solar Light Manufacturing Co., an Illinois Corporation, Defendants-Appellants and Cross-Appellees.

Gen. No. M–51,306.

First District, Fourth Division.

September 6, 1967.

Philip D. Goodman, of Chicago (Philip D. Goodman and Kalvin M. Grove, of counsel), for appellants.

L. Claude Dollahan and Robert A. Sprecher, of Chicago, for appellee.

MORAN, J.

Both plaintiff and defendants appeal from a judgment of the Circuit Court of Cook County in an action to foreclose a claim for a mechanic's lien on property owned by defendant Solar Sales, Inc., and used by defendant Solar Light Manufacturing Co., Inc.

The plaintiff filed its complaint to foreclose a mechanic's lien, alleging that the plaintiff had entered into

a contract with Solar Light Manufacturing Co., hereinafter referred to as Solar Light, on January 14, 1963, for the installation of an air makeup system; that the plaintiff did install the system, completing it on April 26, 1963; that Solar Light has paid $13,050, leaving a balance of $4,150 due to the plaintiff. Solar Light filed an answer and counterclaim, alleging that its contract with the plaintiff required completion of the installation fifteen working days after receipt of Solar Light's purchase order dated January 14, 1963; that the plaintiff failed to complete the work within the time specified; and that Solar Light thereby suffered damages of $10,000. In a Bill of Particulars, Solar Light particularized its damages as (1) labor inefficiency costs; (2) overhead expenses; (3) excessive fuel costs and (4) extra cost for fans.

Subsequently, the plaintiff Narowetz filed a third-party complaint against Dravo Corporation, alleging the delivery of the Dravo unit to be used in the system for Solar Light was not made until January 25, 1963, even though Dravo Corporation promised its delivery on or about November 9, 1962. The complaint prayed for judgment against Dravo Corporation for the amount of any judgment awarded Solar Light.

On February 9, 1966, the trial judge entered an order to the effect that the material allegations of the complaint are true and that the plaintiff is entitled to have and recover from Solar Light the sum of $4,150 and interest; that the material allegations of the counterclaim of Solar Light are true and sustained to the extent of $1,250; that the material allegations of the third-party complaint are sustained to the extent of $250 and that, since Dravo Corporation had paid said sum to the plaintiff, it shall be dismissed from the proceedings; and that the plaintiff have a mechanic's lien on the property owned by Solar Sales, Inc., and used by Solar Light. The trial judge found that "there has been a breach of

contract in this case," but he failed to specify the time of the breach or the time when the installation was completed. He further stated that "the damages shown are nebulous and intangible," adding that he was "going to allow damages for the breach of contract in the amount of $1,250.00 . . ." Upon objections by the defendants that the court should state the specific basis for the finding of damages, the trial judge stated that the evidence which he heard was "too nebulous and intangible to assess any damages in excess of that amount." The defendants appeal from this decree, praying that the judgment entered in favor of the plaintiff be reversed and remanded, with instructions to enter a judgment in favor of Solar Light for the full amount of its counterclaim. The plaintiff cross appealed, praying that the decree be affirmed in all respects, except that portion found as damages on the counterclaim. None of the parties have requested a new trial.

The facts are that the plaintiff, an Illinois Corporation engaged in the business of installing air systems, negotiated with a representative of Solar Light, for the installation of machinery which would replenish and warm air used in Solar Light's plant. On January 14, 1963, Solar Light accepted an offer made by the plaintiff which provided in part:

1. We agree to produce, furnish and install a system in accordance with the factory shop drawings . . . .
2. The system shall consist of one (1) Dravo Counterflow Gas Fired Furnace.
3. The furnace is identified as Model No. 325 Horizontal Arrangement, with base duct inlet, full modulation on the burner, F.I.A. approved on controls and piping . . . .

. . . . . .

7. . . . The system which we will furnish does not include the electrical wiring and starters.

. . . . . .

12. We will initiate the work promptly following the receipt of your Purchase Order (dated January 14, 1963), and will complete the installation of the system within fifteen (15) working days thereafter.

There was evidence that Solar Light desired that the system be installed as soon as possible and that, since Dravo Corporation, the supplier of the furnace, had indicated that it would not be able to deliver the required equipment by the date desired by Solar Light, the installation would cost Solar Light an additional $800 because the fans needed for the system would have to be secured from a supplier other than Dravo.

Mr. Newhouse, an estimator and superintendent for the plaintiff, testified that he pulled his men from the job on February 15, 1963, and that there were only minor corrections which remained. Even though there is some conflicting testimony as to the time that a representative of Factory Insurance Association (F.I.A.) was called, it appears that the representative did inspect the system on April 19, 1963, and refused to approve it, finding a malfunctioning switch and an improperly connected vent. There is some conflicting testimony as to whether the corrections were contained in the original F.I.A. approved shop drawings. The representative returned on April 26 and approved the system. There is also conflicting testimony as to whether the system could be operated safely after February 15, and before April 26.

██ The plaintiff first contends that the trial court erred in finding that it had breached its contract with Solar Light, arguing that it has substantially performed

its obligations by February 15, 1963. However, this date was twenty-three working days after Solar Light sent plaintiff a Purchase Order. Furthermore, there was conflicting testimony concerning the time when the air makeup system could be used safely. It has been reiterated many times that, "where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and will not disturb the findings unless they are manifestly against the weight of the evidence." Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518. We do not believe that the trial judge's finding that the plaintiff breached its contract was contrary to the manifest weight of the evidence.

The plaintiff also contends that the trial judge erred in awarding the defendants damages in the sum of $1,250 on its counterclaim, while the defendants contend that the trial judge erred in not awarding the full amount of the prayer.

The defendants alleged four specific types of damage. The first consists of labor inefficiency costs. It appears that Solar Light was required to leave a garage door open during the working day in order to keep a fresh supply of air circulating in the plant. The extent of the opening and the time during which the door was open are subject to conflicting testimony. There was testimony that the door was also required to be open from one to ten times each day for deliveries. As a result of the opening of the door, the defendants claim that the employees of the plant were required to leave their immediate place of work and go to restrooms to warm up or were required to keep their hands in their pockets for varying periods during each hour of every working day from February to May, 1963. The defendants admittedly compiled their data by interviewing the plant employees a year or more after the alleged occurrence.

Furthermore, United States Weather Bureau records, introduced by the defendants, indicate that the average monthly temperatures for February, March and April varied from 19 to 52 degrees. The total amount of labor inefficiency costs was allegedly $4,637.

The second type of damage alleged consists of overhead expenses, which includes "such items as heat, light, property taxes, insurance and depreciation of plant and equipment" which were allegedly wasted due to the labor inefficiency. The total amount of overhead expenses claimed was $6,724.

The third consists of excessive fuel costs. The comptroller of Solar Light testified that fuel costs for the period of February 11 through April 30 in 1963 exceeded those for the same period in 1964 by $825.

The fourth consists of an extra cost for fans. There was testimony that, since Dravo Corporation had indicated an inability to deliver a furnace complete with fans by the date desired by Solar Light, the installation would cost Solar Light an additional $800 because the fans would have to be secured from a supplier other than Dravo.

With regard to each element of damage allegedly sustained, except for the extra cost for fans, the plaintiff contends that the extent of the delay in completing the installation of the air makeup system was caused primarily by Solar Light's failure to complete the electrical wiring which it had contracted to perform. This contention is based upon four reports from Dravo Corporation workmen to the plaintiff, indicating that electrical work had not been performed or had been performed incorrectly.

Defendants argue that these reports were inadmissible for a number of reasons. However, they do not ask for a new trial, but request us to reject this evidence and enter a judgment in the full amount of their counterclaim. Any error in the admission or rejection of

evidence by the trial court can be considered by the Appellate Court only when a new trial is requested, and not when the sole request is for an outright reversal. Millikin Nat. Bank of Decatur v. Shellabarger Grain Products Co., 389 Ill 196 at 200, 58 NE2d 892; Gundich v. Emerson-Comstock Co., 21 Ill2d 117 at 128, 171 NE2d 60. Defendants have circumscribed the relief they may obtain in this court and waived any errors in the admission or exclusion of evidence by the trial court. McCottrell v. Benson, 32 Ill App2d 367, 178 NE2d 144; Walden v. Chicago & N. W. Ry. Co., 411 Ill 378, 104 NE2d 240.

██ We noted earlier that where the trial court has seen and heard the witnesses and the testimony is contradictory, a court of review will not substitute its judgment as to the credibility of witnesses for that of the trial court and will not disturb the findings unless they are manifestly against the weight of the evidence. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518. While it would serve no useful purpose to detail any further the great amount of evidence in this case, it should be emphasized that there was conflicting evidence concerning the question of whether plaintiff breached its contract and concerning each element of damage claimed by defendants on their counterclaim. We believe that the trial judge did an excellent job in sifting out the credible evidence in a complicated case, and we do not believe that his findings are contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.