MAYER PAVING AND ASPHALT COMPANY, Plaintiff-Appellee, *v.* CARL A. MORSE, INC., OF ILLINOIS *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 76-96, 76-473 cons.

Opinion filed March 30, 1977.

Michael S. Shaw, of Chicago, for appellants.

Richard M. Kates and Sidney C. Kleinman, Ltd., both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Mayer Paving and Asphalt Company (Mayer), brought suit against defendants, Carl A. Morse, Inc., of Illinois through its division Diesel Construction Company (Diesel), and Jupiter McClurg, Inc. (Jupiter), as well as against other parties which have been dismissed. The complaint alleged that certain amounts were due for extra work performed in connection with a contract for construction of tennis courts at McClurg Court, an apartment complex in Chicago. Diesel and Jupiter counterclaimed against Mayer, alleging defective work and materials. After a jury trial, verdicts were returned assessing damages in favor of Mayer for $3900 against Diesel and Jupiter, jointly and severally; in favor of Mayer against Jupiter for $14,400; and in favor of Diesel and Jupiter for $1200 on their counterclaim against Mayer. Post-trial motions filed by Diesel and Jupiter were denied. Judgments were entered in accordance with the verdicts.

Diesel and Jupiter appeal, contending that Mayer did not meet its burden of proof as to its claims; that the damage assessment on their counterclaim was too low and against the manifest weight of the evidence; that the giving of a certain jury instruction constituted reversible error; that remarks made by counsel for plaintiff during closing argument were prejudicial and improperly ruled upon; and that their post-trial motions were erroneously denied. Defendants have also filed a motion with this court to enter an order equitably apportioning the costs of reproducing the excerpts from the record between them and Mayer. The motion was taken with the case.

We affirm the judgment of the trial court, and deny defendants' motion to apportion costs. The pertinent facts follow.

Jupiter is a beneficial owner of a trust involving the McClurg Court apartment complex constructed by Diesel. In July 1971, Mayer subcontracted to construct within the complex two rooftop and three indoor tennis courts. The contract price was $35,000. The number of rooftop courts to be constructed was later amended to three. It is undisputed that Mayer was paid a total of $43,000 for work done on the six courts, which sum includes the contract price and two extras not at issue.

Mayer began work on the courts in October 1971; then, after a few months' break, resumed work in March 1972. In the interim workmen from other trades also working on the complex damaged the surface of the indoor courts. Mayer claimed $4500 to repair the damage as an extra to the contract. The jury awarded Mayer $2250 for this claim against Diesel and Jupiter, jointly and severally.

While the two rooftop courts were under construction, Jupiter increased their number to three. This change necessitated rotating the position of the courts to fit them on the roof. In conjunction with the rearrangement a drainage problem arose. Mayer claims that it became necessary to build a trough to conduct water, which would accumulate on the outdoor courts, to the drains contemplated by the two-court plan. Mayer claimed the trough as an extra. The jury awarded Mayer $550 for the trough, against Diesel and Jupiter, jointly and severally.

After completion of the rooftop courts in June 1972, Diesel notified Mayer of soft spots on these courts. Mayer repaired these and claims that such repair was extra to the contract. The jury awarded Mayer $1100 for repair of the soft spots against Diesel and Jupiter, jointly and severally.

When work resumed on the courts after the hiatus, Diesel notified Mayer in July 1972 that the surfacing work on the courts was not being completed in accordance with the "standard of perfection" required by their contract. At that time Jupiter also chose to put in a cushioned playing surface on the interior courts, which was other than the surface specified in the contract. Diesel obtained a bid from another contractor to do this work. However, Jupiter agreed to let Mayer complete the interior courts with a cushioned surface for $14,400, subject to approval of the work by the director of the complex's sports center. The work was completed and Mayer claims this as an extra to the contract. Jupiter argues that the work was never done to its satisfaction and that the director never gave his approval. The jury awarded Mayer $14,400 against Jupiter on this claim.

The counterclaim of Diesel and Jupiter alleged that by providing defective material and labor, Mayer failed to perform under the contract in a workmanlike manner; that other parties were employed to furnish the work and materials necessary to correct the damage done by Mayer and to complete the work; and that damages were sustained in the loss of profit and reputation. It prayed $53,000 in damages against Mayer. At trial, a witness for Diesel and Jupiter testified that another firm was hired to repair the indoor courts at a cost of $30,060, and the evidence disclosed that of this amount all but $1500 was for installation of a carpet surface not called for by Mayer's contract. This witness also testified that lost court time amounted to about $3000 or $4000 on the indoor courts while repairs were done. The jury awarded Diesel and Jupiter $1200 on the counterclaim.

I.

■■ On appeal, Diesel and Jupiter argue that Mayer failed to meet its burden of proof as to its various claims. A contractor seeking to recover for extras must prove by clear and convincing evidence the essential

elements set forth in *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270. He must establish that: (2) the work was outside the scope of his contract promises; (b) the extras were ordered by the owner; (c) the owner agreed to pay extra, either by his words or conduct; (d) the extras were not furnished by the contractor as his voluntary act; and (e) the extras were not rendered necessary by any default of the contractor.

Defendants first argue that Mayer has not met its burden of proving that it is entitled to be paid $550 for the trough and $1100 for soft-spot repair on the rooftop courts.

The contract required the subcontractor (Mayer) to check the surfaces and advise the general contractor (Diesel) of any unsatisfactory surface. It stated that the start of the subcontractor's work would constitute acceptance of the surfaces, so that any corrective work thereafter would be the subcontractor's responsibility. The contract further provided that if in the subcontractor's opinion he could not proceed with any aspect of the work specified so as to produce work of first-class quality, he should refer the matter to the architect before proceeding. Defendants argue that Mayer did not comply with these contract provisions, that the provisions have not been waived and that they constitute a complete bar to Mayer's recovery for the soft-spot repair and the trough.

Mayer testified that due to the composition of the roof upon which the outdoor courts were constructed, it could not have been ascertained on visual inspection whether the roofer had used an amount of tar which would thereafter produce soft spots on the courts. There was also evidence that the roofers did not correctly provide a slope from the courts and that water remained on instead of flowing from the roof and courts to the drains. Further, Mayer testified that the owner ordered repair of the soft spots and construction of a trough, and that the owner also offered to pay for the work as extras.

Defendants also contend that Mayer has not met its burden of proving that it was entitled to be paid for repairing the damage to the indoor courts allegedly caused by other trades. Defendants argue that insofar as Mayer's contract called for it to protect its work, as a matter of law the repair work was within the scope of the contract and not an extra.

The project manager for Diesel testified at trial that it was his job to coordinate the trades. Mayer testified that after laying the surface course on the indoor courts, it was not called back to work for several months. Mayer further testified that although defendants had been warned to keep off the surface, when Mayer resumed work there were footprints over the surface of the courts. The parties stipulated that there was some damage to the surface due to defendants' storing flower pots and placing

scaffolding in that area. Mayer testified that when Diesel was notified about what had occurred, Diesel told Mayer to keep a record of the time that it took to patch the area, to bill it to Diesel, and that Diesel would pay for the repair work.

Finally, defendants contend that Mayer has not met its burden of proving that it was entitled to be paid $14,400 for relevelling, cushioning and resurfacing the indoor courts, and that the award for this amount was against the manifest weight of the evidence.

The evidence showed that when work resumed on the indoor courts in 1972, after the winter hiatus, Jupiter chose to install a cushioned playing surface on the indoor courts instead of the surface specified in Mayer's contract. Although Diesel had obtained a bid from another contractor for this work, Jupiter allowed Mayer to complete the indoor courts with a cushioned surface, and agreed to pay $14,400 for the work, if it was done to the satisfaction of Max Davidson, director of the McClurg Court sport complex.

Mayer testified at trial as follows:

> "My orders to Joe Yacullo [Mayer's employee], were, 'Do not paint the lines on the court until Max Davidson has accepted the courts.' Max Davidson called me on the phone and said, 'Buddy, I think the courts need one more coat of color.' I said, 'Max, if we put on one more color coat, will you accept the courts?' He says, 'Absolutely.' I said, 'Let me talk to Joe Yacullo.' I said, 'Joe, put on one more coat of color and paint the lines.' "

In this regard, Joe Yacullo gave essentially the same testimony at trial as did Mayer.

Mayer further testified that if a cushion course is put on a court already constructed, a new five-coat color finish system would have to be applied at a cost of $2500 per court. Thus the cost of the color system for the three indoor courts was $7500. Adding to this sum the cost of the cushion material itself, about $7000, gives a total of $14,400.

■■ From the above we find that Mayer has sustained its burden of proving the essential elements of recovery for extras set forth in *Watson Lumber Co. v. Guennewig*. (See also *Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 333 N.E.2d 19; *Strom v. Lipschultz* (1972), 5 Ill. App. 3d 308, 282 N.E.2d 257.) We find that the awards of $1100 for soft-spot repair, $550 for the trough, $2250 for repair due to other trade damage, and $14,400 for relevelling, cushioning and resurfacing the indoor courts, are not against the manifest weight of the evidence.

In this context defendants also argue the award of $2250 on Mayer's claim of $4500 for the repair of damage due to other trades represents a compromise verdict. The amount of damages is a matter for the jury to determine based on the evidence before it, and we will not disturb its

findings unless it is against the manifest weight of the evidence. (*Reeves v. Eckles* (1969), 108 Ill. App. 2d 427, 248 N.E.2d 125.) From the record before us we find that there was sufficient evidence upon which the jury could have based its award, and we cannot conclude that the verdict was a compromise.

## II.

■■■ Defendants argue that the award on their counterclaim must be taken as a finding that Mayer breached its contract and is precluded from recovery. In *Watson Lumber Co. v. Guennewig* it was recognized that literal performance in construction contracts is unlikely. Therefore, if an owner gets substantially that which he bargained for, he must pay for it, subject to deductions from the contract price for the difference between what he received by actual performance and what he had bargained for.

■■ Defendants further argue that the award of $1200 on their $53,000 counterclaim is against the manifest weight of the evidence. Witnesses for both sides testified, and were subjected to cross-examination, concerning the extent to which the indoor courts were repaired after Mayer had finished its work. The findings of the trier of fact will not be disturbed when evidence is contradictory, unless we are able to determine that its findings are manifestly against the weight of the evidence. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518; *Narowetz Heating & Ventilating Co. v. Solar Sales, Inc.* (1967), 86 Ill. App. 2d 387, 230 N.E.2d 37; *Mandelbaum v. G. F. Connelly Co.* (1961), 32 Ill. App. 2d 313, 177 N.E.2d 878 (abstract).) In conjunction with their counterclaim, defendants submitted as an exhibit a contract with another firm which resurfaced the three indoor courts after Mayer had finished at a contract price of $30,060.60 The principal part of this contract was for carpeting the courts with an indoor-outdoor carpet not called for in Mayer's contract, but there is a $1500 charge for "resurfacing * * * the cracks and obvious low areas and depressions." The jurors saw and heard the witnesses. We believe the jury did an excellent job of sifting out the credible evidence as related to both plaintiff's claim and defendants' counterclaim. We find that no useful purpose would be served in further detailing the great amount of evidence in this complex case. We conclude that the jury award of $1200 on defendants' counterclaim is not against the manifest weight of the evidence.

## III.

Defendants argue that Mayer's jury instruction, concerning modification and waiver of a contract, is prejudicial, misleading and an incorrect statement of the law. The instruction, which was given over defendants' objection, reads as follows:

"Parties to a written contract may modify it by a subsequent oral agreement or may waive any part of it."

■■ The contract at issue provides that the subcontractor will be paid for extras ordered by the general contractor only if the order is in writing. It has been held that such a contract does not preclude oral modification if the party who could thereafter insist on limiting changes only as evidenced in writing, does not do so. (*Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 323 N.E.2d 806; *Ed Keim Builders, Inc. v. Hartley* (1971), 132 Ill. App. 2d 119, 268 N.E.2d 49.) Further, oral modifications in written building contracts are permitted, and recovery may be obtained on substantial performance under the contract as modified. *Williams v. Ames* (1946), 330 Ill. App. 242, 70 N.E.2d 741 (abstract).

■■ In the case at bar there was evidence that the extras upon which the judgment for Mayer is based had defendants' approval, were made on defendants' instructions, and defendants allowed the work to proceed on oral agreements. We hold that it was not error for the trial court to give the jury Mayer's instruction concerning modification or waiver of a written contract.

### IV.

Defendants contend that they have been prejudiced by certain statements made by plaintiff's counsel in closing argument which distort the testimony.

We do not set forth the various remarks about which complaint is made. The trial was long and complex, and the jury was confronted with a great deal of evidence concerning plaintiff's various claims and defendants' counterclaim. The trial judge cautioned the jury that if a statement or argument of counsel had no basis in evidence it should be disregarded. Closing argument which exceeds the limits of permissible advocacy may be cured by such cautionary remarks by the trial court. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453.) A trial need not be free from error. Our concern is whether there was error which prejudiced the party seeking review or which unduly affected the outcome at trial. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.

We have reviewed the record and cannot say that taken as a whole the argument constitutes reversible error.

### V.

Defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. They argue on appeal that the motion was erroneously denied.

■■ A motion for judgment notwithstanding the verdict asserts,

essentially, that the evidence is legally insufficient to support a verdict and judgment for the adverse party. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ A distinction has been drawn between the function of a trial court in setting aside a verdict because it is against the manifest weight of the evidence, and that of a court of review in setting aside a verdict because it is against the manifest weight of the evidence where the trial court has denied such motion. A court of review must consider not only the jury verdict, but also the fact that the trial judge saw and heard the witnesses, heard argument of counsel, and then denied the motion. (*Vasic v. Chicago Transit Authority* (1961), 33 Ill. App. 2d 11, 180 N.E.2d 347.) "It requires much more for this court to set aside a verdict and judgment than is required of the trial judge. It is his duty to set aside the verdict if he is of the opinion that the plaintiff has not sustained his cause by a preponderance of the evidence, while the question of the preponderance of the evidence does not arise at all in this court." *Read v. Cummings* (1945), 324 Ill. App. 607, 610, 59 N.E.2d 325, 326.

We are of the opinion that the verdicts of the jury, approved by the trial judge, were not against the manifest weight of the evidence. Therefore, the motion was properly denied.

## VI.

■■ Finally, defendants have filed a motion in this court to resolve a "misunderstanding" between opposing counsel and to equitably apportion the costs of reproducing the excerpts from the record. The motion alleges that the excerpts filed by stipulation of counsel cost $885.80 to reproduce which "[b]y Stipulation and agreement, counsel for the Plaintiff-Appellee requested the inclusion of 162 pages"; and that defendants' counsel reasonably assumed that an understanding existed to share the costs in proportion to the pages requested although no discussion was had on the subject. The record shows that the excerpts totaled 697 pages and were filed pursuant to the stipulation. An abstract or excerpts from the record are pleadings in the case and must contain everything necessary to the decision of the issues. (*Davis v. Davis* (1970), 128 Ill. App. 2d 427, 262 N.E.2d 788; *Denenberg v. Prudence Mutual Casualty Co.* (1970), 120 Ill. App. 2d 68, 256 N.E.2d 71.) The stipulation indicates the agreement of counsel as to the excerpts required for review. No allegation or proof appears that any portion of the excerpts was unnecessary. (See Ill. Rev. Stat. 1975, ch. 110A, par. 342(h).) Accordingly, defendants' motion is denied.

## VII.

For the reasons stated the foregoing motion of defendants is denied and

the judgments entered by the circuit court of Cook County on the verdicts are affirmed.

Motion denied; judgments affirmed.

McNAMARA and McGLOON, JJ., concur.