**CHICAGO COLLEGE OF OSTEOPATH-IC MEDICINE, Plaintiff,**

v.

**GEORGE A. FULLER COMPANY,
Defendant-Appellant,
Cross-Appellee,**

and

**Ed Hoffman Excavating, Inc.,
Cross-Claimant-Appellee,
Cross-Appellant.**

Nos. 84–2933, 84–2994.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1985.

Decided Nov. 4, 1985.

Robert E. Kehoe, Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellant, cross-appellee.

Sherwin D. Abrams, Abrams, Rifkin & Chapman, Chicago, Ill., for cross-claimant-appellee, cross-appellant.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GARZA, Senior Circuit Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The appeal in this diversity jurisdiction case concerns a small portion of a much larger dispute arising over the construction of an out-patient clinic at the Chicago College of Osteopathic Medicine in Hyde Park, Chicago. This court resolved most of the dispute in *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335 (7th Cir.1983); however, on the issue whether Ed Hoffman Excavating, Inc. ("Hoffman"), the subcontractor excavator on the project, is entitled to any delay damages from George A. Fuller Co. ("Fuller"), the general contractor, we remanded for additional findings.

In its first decision the district court granted relief to Hoffman for costs incurred consequent to a nine-month delay in excavation of the site, holding that a clause in the subcontract expressly waiving Hoffman's rights to collect for damages caused by delays (the "Delay Waiver Clause") did not apply to the extraordinary delays involved in this case. On appeal we reversed, holding that Illinois law did not permit such a narrow construction of the Delay Waiver Clause, and remanded for the district court to consider three other theories upon which relief might be granted to Hoffman: (1) that Fuller waived its rights under the Delay Waiver Clause, (2) that Hoffman met the five-prong test for obtaining payment for extra work, and (3) that the parties orally modified the written contract. *Id.* at 1340–41. On remand the

district court, relying on all three legal theories, held that Fuller was liable to Hoffman in the amount of $180,189. Fuller appeals the finding of liability and the damages determination; Hoffman cross-appeals seeking additional damages.

### I. *Facts*

In 1973 Fuller and Hoffman entered into an agreement (the "Subcontract") for Hoffman to perform the excavation and backfill work for an out-patient clinic at Chicago College of Osteopathic Medicine. The Subcontract price was $210,000.

Originally, Hoffman was to commence work on November 9, 1973. Because of delays caused by the owner, Chicago College of Osteopathic Medicine ("CCOM"), and the architect, Schmidt, Garden & Erickson ("SGE"), Hoffman did not actually begin work until January 25, 1974. For the next seven months through no fault of its own Hoffman proceeded with the excavation in a sporadic, unorthodox, and more expensive manner. For example, it began work on January 25 by clearing the site, which took about a week. Hoffman then halted work until March 9, 1974, when it began excavation, but only to a depth of five feet in limited areas of the site. Hoffman performed this partial excavation work in eight to ten days. About a month later Hoffman was directed to recommence the excavation; this time Hoffman encountered uncharted sewer lines which halted excavation. Hoffman returned to the site on May 9 only to discover existing fire lines which forced another delay. Delays of this sort continued to plague the excavation project for several more months until August 7, 1984, nine months after excavation was originally scheduled to begin; on that date Hoffman finally began uninterrupted mass excavation, completing the job in three and one-half months.

During the delay period Hoffman wrote to and had several conversations with Full-

---

* The Honorable Reynaldo G. Garza, Senior Circuit Judge of the United States Court of Appeals of the Fifth Circuit, is sitting by designation.

er about the delays and the problems the delays were causing Hoffman. In a January 2, 1974 letter Hoffman complained about the delay and asked Fuller to either release Hoffman from its "contractual obligation" or pay the additional charges sought. Fuller orally asked Hoffman "to hang on in good faith" and promised Hoffman that it would be paid for the additional costs that it was incurring as a result of the delays. Tr. 2988. On February 8, 1974, Hoffman wrote to Fuller advising that Hoffman would be seeking additional remuneration because of the delays. In a February, 1974 meeting Fuller assured Hoffman that Article XI, the Delay Waiver Clause,[1] which allocated the risk of delay to Hoffman, *Fuller*, 719 F.2d at 1339–40, did not apply to the extraordinary delays that had occurred, that Fuller would pay for the additional costs that Hoffman was incurring, and that Fuller would attempt to pass on such costs to SGE and CCOM. Tr. 54–59 & 29.

On July 1, 1974, Hoffman wrote a letter to Fuller detailing the problems that had arisen consequent to the delays and asked Fuller to "notify [Hoffman] in writing to cease and desist the excavating work immediately" if Fuller would "not accept or process the additional charges over and above the contract amount which is forth coming (sic)." Fuller never responded in writing but continued to promise orally that it would pay Hoffman for its additional costs. Tr. 2988.

Although delay problems ended on August 25, in their stead arose problems over the storage of excavated material Hoffman hoped to use as backfill material. Under the terms of the Subcontract Hoffman was responsible for providing "materials ... necessary for the proper completion of the ... Backfill work." Article I. The Subcontract specifications provided, however, that Hoffman could use material excavated from the lowermost layer of the excavation as backfill material provided it met specifications.[2] Paragraphs 54 and 55 Exhibit A to the Subcontract allowed Hoffman to stockpile the excavated backfill material on the job site provided space was available and imposed on it any expense of relocation of the sand.[3]

Initially space was available at the job site for stockpiling the backfill material and Hoffman took advantage of it. In September, 1974, however, the stockpiled material began to create a safety hazard and Fuller told Hoffman to remove the material. Hoffman refused to remove the sand until Fuller had agreed to pay for extra costs incurred and provided Hoffman an alternative storage site a block away. Later, Fuller directed Hoffman to remove the material from the alternative storage site. Hoffman again refused to remove the material until Fuller promised additional compensation. This time, rather than move the sand to another location, Hoffman sold it for about $9,000. When it came time to backfill the CCOM job Hoffman replaced the sand it had sold with sand it had excavated at the Brain Research project, another excavation project in the area that Hoffman was working on.

On these facts Judge Leighton held (1) that Fuller waived its right under Article

1. Article XI, the Delay Waiver Clause, provides: The Subcontractor [Hoffman] expressly agrees not to make, and hereby waives, any claim for damages on account of any delay, obstruction or hindrance for any cause whatsoever ... and agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of the time fixed for completion of the Work.

2. "2F18: The existing material (generally sand) found below about 10 ft. depth and extending to the clay level may be used for backfilling and filling purposes provided it is free from deleteri-

ous substances and is of compactible nature and condition."

3. Exhibit A to the Agreement:
   54. Excavating Materials shall be placed in areas as directed and suitable materials for backfill as shown or required.
   55. Stockpiling of material will be allowed only if space is available. If any material is stock-piled and relocation of same is required, the Subcontractor at his own expense, shall immediately upon ratification [sic notification], relocate said material at no cost to the Owner or Contractor.

XXXIV to insist that all waivers and modification be in writing,[4] its right under Article XI, the Delay Waiver Clause, to be free from liability for costs of delay incurred by Hoffman, and its right under paragraphs 10 and 35 of Exhibit A to insist that Hoffman bear the costs occasioned by being forced to perform the work out of sequence or in an otherwise unorthodox fashion;[5] (2) that Fuller and Hoffman orally modified the terms of the subcontract;[6] and (3) that Hoffman met the five-prong test for obtaining extra pay for providing replacement sand for backfill. Judge Leighton awarded Hoffman $180,189, $85,539 to cover the cost of doing the excavation work and $94,650 for providing the replacement backfill sand.

## II. *Liability for Delay Damages*

■ We first review Judge Leighton's finding that Fuller waived its rights under the Subcontract. Waiver is the voluntary and intentional relinquishment of a known right. *Pantle v. Industrial Commission*, 61 Ill.2d 365, 372–73, 335 N.E.2d 491, 496 (1975); *Lempara v. Karner*, 79 Ill.App.3d 221, 223, 34 Ill.Dec. 549, 550, 398 N.E.2d 224, 225 (1st Dist.1979); *Michel v. Efferson*, 223 La. 136, 65 So.2d 115, 119–20 (1953); *Gamble v. Hogan*, 88 Ga.App. 430, 76 S.E.2d 658, 661 (1953); *Mayhew & Isbell Lumber Co. v. Valley Wells Truck Growers' Association*, 216 S.W. 225, 233 (Tex. Civ.App.1919); 17A C.J.S. *Contracts* § 514(1), p. 838 (1963). Waiver may be proven by words or deeds of the party against whom waiver is invoked that are inconsistent with an intention to insist on

that party's contractual rights. *John Kubinski & Sons, Inc. v. Dockside Development Corp.*, 33 Ill.App.3d 1015, 1020, 339 N.E.2d 529 (1st Dist.1975).

■ Article XXXIV of the Subcontract expressly provides that "provisions of this contract [cannot] be waived except by an express waiver in writing." Since there is no writing waiving this "Waiver Only in Writing" provision, or any other Subcontract provision, Article XXXIV would seem to preclude a finding of waiver. However, the weight of the authority in Illinois holds that Waiver Only in Writing provisions can be waived by words and deeds of the parties, so long as the waiver is proved by clear and convincing evidence. *See Delta Construction, Inc. v. Dressler*, 64 Ill. App.3d 867, 874–75, 21 Ill.Dec. 576, 582, 381 N.E.2d 1023, 1029 (3d Dist.1978); *Custom Builders, Inc. v. Clemons*, 52 Ill. App.3d 399, 403, 10 Ill.Dec. 149, 152, 367 N.E.2d 537, 540 (3d Dist.1977); *Mayer Paving & Asphalt v. Carl A. Morse, Inc.*, 48 Ill.App.3d 73, 80, 8 Ill.Dec. 122, 127, 365 N.E.2d 360, 365 (1st Dist.1977). *But see Radio Corporation of America v. Smith*, 109 Ill.App.2d 91, 248 N.E.2d 310, 311 (5th Dist.1969). Judge Leighton held that Fuller, through its words and deeds, waived its right to insist on a waiver in writing. This finding is supported by the factual finding that Fuller made repeated oral promises to Hoffman that it would reimburse Hoffman for costs occasioned by the delays notwithstanding the Delay Waiver Clause. The oral manner in which the promises were made is, under Illinois precedent, sufficient

---

4. Article XXXIV, the Waiver Only in Writing Clause, provides: "This Contract constitutes the entire agreement between the parties hereto and cannot be amended, modified or changed except as herein provided, nor can the provisions of this Contract be waived except by an express waiver in writing."

5. Exhibit A ¶ 10 provides: "It is understood and agreed that certain items of Work may be stopped and completed at a later date with no additional cost charged to Owner, Architect or Contractor."
   Exhibit A ¶ 35 provides:
   The Subcontractor shall perform his Work when and as directed by the Contractor. The

Subcontractor shall omit any sections or portions of his Work that may be required by the Contractor and shall later fill in such sections or portions when directed, at no additional cost to the Contractor. The Subcontractor shall also perform any Work out of sequence that may be required by the Contractor, at no additional cost to the Contractor.

6. The district court opinion does not specify which terms of the subcontract were modified or make findings regarding the various necessary elements for modification: offer, acceptance, and consideration.

evidence of an intention not to insist on the waiver being in writing. *See Delta Construction, Inc.,* 64 Ill.App.3d at 874–75, 21 Ill.Dec. at 582, 381 N.E.2d at 1029 (3d Dist.1978) (orally requesting extra work from a subcontractor and agreeing to alteration of the subcontract is sufficient without a writing to show a waiver of a Waiver Only in Writing provision). *But see Radio Corporation of America,* 248 N.E.2d at 311. We therefore uphold Judge Leighton's finding that Fuller waived the Waiver Only in Writing provision.

■ Paragraph 35 of Exhibit A provides that

the Subcontractor shall perform his Work when and as directed by the Contractor. The Subcontractor shall omit any sections or portions of this Work that may be required by the Contractor and shall later fill in such sections or portions when directed, at no additional cost to the Contractor. The Subcontractor shall also perform any Work out of sequence that may be required by the Contractor, at no additional cost to the Contractor.

Paragraph 10 of Exhibit A provides that "certain items of Work may be stopped and completed at a later date with no additional cost charged to Owner, Architect or Contractor." Finally, Article XI provides that

[t]he Subcontractor expressly agrees not to make, and hereby waives, any claim for damages on account of any delay, obstruction or hindrance from any cause whatsoever ... and agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of the time fixed for completion of the Work.

Read together, these three provisions allocate to Hoffman the risk of delay. Therefore, absent waiver or modification, these three provisions preclude Hoffman from collecting damages for delay.

Judge Leighton found that Fuller waived its right under these three provisions to insist that Hoffman bear the costs for the delays. Judge Leighton grounded this conclusion upon factual findings (1) that Fuller repeatedly promised Hoffman that it (Fuller) would be personally liable to Hoffman for the delays and (2) that Fuller stated that the Delay Waiver Clause did not apply to the extraordinary delays involved here. These statements by Fuller constitute behavior inconsistent with an intention to insist on Fuller's rights under these provisions of the Subcontract and therefore support the waiver finding.

Fuller attacks Judge Leighton's waiver finding on two grounds. First, Fuller argues that Judge Leighton never found that Fuller promised to be personally liable for the delay damages, but only promised that Hoffman "would be paid," and that to the extent a payor was identified it was CCOM or SGE. Although some of Judge Leighton's findings do not point to a particular actor (*i.e.,* payor), other findings make clear that Fuller promised Hoffman that it would be the payor of last resort in the event neither SGE nor CCOM paid Hoffman. *See, e.g.,* pp. 6 & 10 of Judge Leighton's order. Moreover, where someone promises that something will occur, the implication is that the promisor assumes the responsibility for seeing that it occurs. Here the finding that Fuller promised Hoffman that it "would be paid" implies a finding that if SGE or CCOM did not pay for the delays Fuller would.

In the alternative Fuller argues that even if Judge Leighton did find that Fuller promised to be personally responsible for the delay damages, that finding is clearly erroneous. Fuller argues that the finding is contradicted by evidence in the record showing that Hoffman and Fuller agreed to work together to get payment from CCOM and SGE for the delays. We do not agree that the finding and the supporting evidence are inconsistent.

Hoffman and Fuller may have understood that SGE and CCOM were the culpable parties and therefore agreed to work together to force those parties to pay for the delays. This does not, however, preclude finding that Fuller promised to be personally responsible to Hoffman for delay damages in the event the culpable par-

ties did not make payment. Hoffman, the subcontractor, was in privity with Fuller, the contractor, not with CCOM or SGE. It was therefore reasonable for Hoffman to look to Fuller, not CCOM or SGE, for assurances that it would be compensated for any delay costs. On this record it was not clearly erroneous to find that Fuller promised to be personally liable to Hoffman for the delay damages.

Although Fuller does not argue the point, an argument might be made that the waiver theory is not applicable because Fuller did not *voluntarily* relinquish its rights under the provision. It is true that a party may not be held to waive a right where the relinquishment of the right is not voluntary. *See Michel v. Efferson*, 65 So.2d at 119–20; *Mayhew & Isbell Lumber Co.*, 216 S.W. at 233; 17A C.J.S. *Contracts* § 514(1), p. 838 (1963). Involuntary relinquishment of a known right might occur for instance where a party relinquishes a contract right in response to the other party's threatened breach. We do not, however, construe Hoffman's words and actions respecting the delay costs as threatening breach. In the January 2, 1974 letter Hoffman complained about the delay and asked Fuller to either release it from its contractual obligation or pay the additional charges sought. In the February 8, 1974 letter Hoffman advised Fuller that Hoffman would be seeking additional remuneration because of delays. In the July 1, 1974 letter Hoffman detailed the problems that had arisen consequent to the delays and asked Fuller to "please notify Hoffman in writing to cease and desist the excavating work immediately" if Fuller would not "accept or process the additional charges over and above the contract amount which is forth coming (sic)." These letters do not actually threaten breach. We therefore hold that Fuller's promise that Hoffman would be paid for the delays was not a promise in the face of a threatened breach but was made voluntarily. Accordingly, we uphold Judge Leighton's finding that Fuller waived its contractual right to insist that Hoffman bear the costs of delay and is liable to Hoffman for those costs.

## III. *Calculating Delay Damages*

Judge Leighton awarded Hoffman $85,539 for costs occasioned by the delays. The judge calculated delay damages using a total cost approach. That is, he totalled Hoffman's costs for the job and subtracted credits to which Fuller is entitled.

Judge Leighton based his total cost finding on the following schedule prepared by Hoffman's accountant:

Cost of Hoffman's Services

| | | | |
|---|---|---|---|
| A. | Total Equipment Rental Payments | | $71,328.81 |
| B. | Hoffman's Costs During Delay (11/9/73–8/6/74): | | |
| | Hoffman Equipment & Labor | $58,239.88 | |
| | Rented Equipment Payroll | 856.86 | |
| | Garage Delay Payroll Costs | 19,969.53 | |
| | Idle Equipment | 88,098.00 | |
| C. | Hoffman's Costs After Delay (8/7/74–Finish): | | 167,163.27 |
| | Hoffman Equipment & Labor | 66,755.00 | |
| | Hoffman Payroll & Maintenance | 12,941.60 | |
| | Hoffman-Overtime Premium | 15,280.37 | |
| | | | 94,976.97 |
| | | | $333,469.05 |

The district court then apparently rounded off the total cost figure to the nearest dollar amount. From this total Judge Leighton also allowed Fuller credits of $248,000, including $209,000 for prior payments on the Subcontract, $9,000 received by Hoffman from the sale of CCOM's excavated sand, and $30,000 Fuller paid for extra excavation work Hoffman performed when a cave-in occurred on the site in late 1974 or early 1975. Subtracting the $248,000 from $333,469 yields a $85,469 delay damages figure.

Before considering Fuller's attacks on the delay damages calculations, we note a $70 discrepancy between the $85,469 figure arrived at above and the $85,539 Judge Leighton actually awarded. This discrepancy is apparently the result of errors in

arithmetic and transcription. Accordingly we reduce the delay damage award by $70.

■ Relying on *Boyajian v. United States*, 423 F.2d 1231 (Ct.Cl.1970), Fuller attacks the district judge's use of the total cost approach in determining the delay damages. *Boyajian* rejected the total cost approach where the damages are not reasonably related to the defendant's alleged breaches. Fuller argues that use of the total cost approach in this case is similarly suspect because it does not differentiate between delay costs caused by Fuller and those attributable to others, namely SGE and CCOM.

It is true that the total cost approach does not differentiate those delay costs attributable to Fuller from those attributable to SGE and CCOM, and that the district court found that SGE and CCOM shared the blame with Fuller for the delays. This failure to identify the causal agent for a particular cost is not important here, however, because Fuller is liable for all the delay damages. In waiving its rights under the Waiver of Delay Damages Clause and Paragraphs 10 and 35 of Exhibit A, Fuller effectively promised Hoffman that it would be paid for any delay damages, if not by SGE or CCOM, then by Fuller.

One rough test for determining whether the total cost approach has yielded a fair damage amount is to compare the costs unrelated to the breach (*i.e.*, normal or expected costs) with the original contract price; if the former is greater than the latter then the damage award is probably too high. In this case if the non-delay costs totalled more than the $210,000 Subcontract price then Fuller would be paying Hoffman more for the job (ignoring delays) than it originally contracted to pay; however, that is not the case here. According to the cost schedule Hoffman incurred non-delay costs of approximately $166,000 (approximately $71,328 for equipment rental and $94,976 for costs after delay). The figure of $166,000 is substantially under the $210,000 contract price. In this case then the total cost approach does not result in Fuller paying more for non-delay costs

than it originally agreed to pay for the excavation and backfill work.

We now turn to an examination of each component of the delay damages award.

■ *Idle Equipment During Delay ($88,098):* Hoffman's accountant figured the cost of idle equipment time on the assumption that, but for the delays, the equipment would have been used six days per week, eight hours per day. The accountant determined the number of idle days by taking the number of working days during the delay period (November 9, 1973, to August 7, 1974) and subtracting holidays, weekends, and the number of days that Hoffman used the equipment either on the CCOM job or on any other project during the delay period. The accountant then multiplied the number of idle days, first by eight hours per day and then by the going per hour rate for a similar piece of equipment. He then reduced that product by 50% to account for the fact that Hoffman did not incur the cost of an operator or fuel while equipment remained idle.

Fuller challenges the idle equipment time figure of $88,098 on several grounds. First Fuller contends that the figure overstates idle equipment time damages because it does not reflect the usual idle equipment time that Hoffman would have experienced if there had been no delay. In particular, Fuller contends that Judge Leighton should have subtracted for rain days and regular maintenance downtime in figuring idle equipment time. The record contains, for example, uncontradicted evidence that on August 2, 1974, there were heavy rains that caused extensive flooding of the excavation site and no doubt would have prevented excavation work on the site. The district judge did not, however, err in ignoring this rain day because it came well after Hoffman would have been finished with the excavation had it been able to start on time. Nor did the district court err in not offsetting for regular maintenance downtime. Fuller fails to point to any evidence in the record from which a trier-of-fact could determine whether, or to what extent, Hoffman would have experi-

enced regular maintenance downtime during the delay period. Absent any evidence in the record estimating the amount of downtime during the delay period, it was not clearly erroneous for Judge Leighton to ignore downtime for regular maintenance in figuring damages for idle equipment time.

Fuller also argues that a concrete truck-drivers' strike between May 15, 1974, and July 2, 1974, would have prevented Hoffman from performing deep excavation had it been working during the delay period because concrete foundations must be placed in deep holes immediately to prevent collapses. Judge Leighton did not err in ignoring the strike in calculating damages. First, the appellate record does not contain any reference to the concrete truck-drivers' strike or to the dangers of collapse if foundations are not placed immediately in deep holes.[7] Second, the record establishes that if Hoffman had begun excavation work on or before the January 27 starting date, it would have completed the CCOM job before the strike began in May.[8]

Judge Leighton discounted the idle equipment total by 50% to account for the fact that Hoffman paid no machine operator wages or fuel costs during the delay period. Fuller argues that this discount rate is arbitrary. Fuller points to testimony of Hoffman's accountant that he had no personal expertise in cost accounting for idle equipment and did not know whether the discount rate should be 40, 50, or 60%. Although the accountant may not have personally known why 50% was chosen, the record shows that he did not pick the figure out of thin air, but arrived at it after consultation with Mr. Hoffman. The record also shows that Mr. Hoffman felt that, if anything, the 50% figure overstated the discount rate. Fuller presented no in-dependent evidence disputing the 50% figure nor did it suggest an alternative figure. Judge Leighton did not err in using the 50% discount figure.

■ *Total Equipment Rental Payments ($71,328.81):* Hoffman rented some of the equipment used on the CCOM job and charged Fuller for this rental. Fuller challenges $13,500 of the $71,328.81. The $13,500 represents a back-charge assessed against Hoffman by Power Construction, the general contractor who succeeded Fuller on the CCOM job, for special equipment Power apparently had to rent to correct work Power claimed Hoffman had defectively performed. At trial Mr. Hoffman testified that in fact one of Fuller's other subcontractors (the plumber) had performed the defective work for which Power back-charged Hoffman. On that basis Hoffman sought to pass the back-charge onto Fuller. Although the parties in their briefs argue over who performed the defective work for which Hoffman was back-charged, the real issue is whether the back-charge resulted from delays. Hoffman points to no evidence of this causal relationship and we have found none. Since there is no evidence of a causal link between the $13,500 back-charge and the delays, allowing the cost is clearly erroneous. *See Boyajian,* 423 F.2d at 1235–36. We therefore reduce the costs allowed for equipment rental by $13,500.

■ *Hoffman's Equipment & Labor During & After Delay ($124,993.88):* To calculate the charge for Hoffman's equipment the accountant multiplied the number of hours Hoffman actually used each piece of equipment on the job by the hourly rate which other companies were charging for use of comparable equipment. Fuller ar-

---

7. The district court clerk apparently misplaced the record. Fuller has complied an appendix containing large portions of the record for us on appeal. Although Fuller's brief cites transcript page 1418 to support its claim that the strike occurred and that concrete foundations must be placed immediately in deep holes to prevent collapse we are unable to locate that page in the appendix Fuller compiled.

8. Although if Hoffman had started and finished the job on time it might still have experienced work stoppage on another project during the strike, the district court did not clearly err in refusing to speculate on what effect the strike might have had on Hoffman's work had it been working on another project.

gues that this item should have been calculated according to Hoffman's *actual* cost for the equipment (*i.e.*, fuel, depreciation, and operators' wages). Hoffman's accountant testified that Hoffman did not have a cost accounting system from which to determine actual equipment costs. Furthermore, Fuller failed to demonstrate what figure its proposed alternative "actual cost" approach would yield or even whether it would be greater or less than the $125,000 allowed. Since Hoffman did not have a cost accounting system from which to derive an actual cost figure and Fuller did not provide an alternative cost figure, Judge Leighton did not err in adopting the cost figure based on rental prices of comparable equipment put forward by Hoffman.

■ *Garage Delay Payroll Costs ($19,-969.53):* Judge Leighton awarded Hoffman $19,969.53 for paying the salaries of several supervisory employees it kept on payroll during the delay period. During the delay some of these employees spent time cleaning and painting the equipment, applying a sealant to the floor, and otherwise busying themselves in the garage. Fuller argues that it should not be charged for this "productive" garage time during the delay period. Fuller made no attempt to establish the value of such "busy work." Absent such a showing the court did not clearly err in placing a nominal value on the "busy work" and ignoring it when calculating the charge for garage delay.

■ *Credit for Sale of Sand ($9,000):* In figuring delay damages Judge Leighton gave Fuller a $9,000 credit which reflected the amount Hoffman received from the sale of the sand it was ordered to remove from the second storage site. This was clearly erroneous since the sale of the sand occurred after the delay period ended and had no causal connection with the delay. *See Boyajian,* 423 F.2d at 1235–36. Rath-er Judge Leighton should have credited Fuller with the $9,000 in figuring the damages for the cost of replacement sand, liability for which we consider below.

Reducing the $85,539 delay damage award by the $70 arithmetic error, the $13,-500 erroneously allowed for the Power back-charge and increasing the award by the $9,000 erroneously subtracted for the proceeds Hoffman received from the sale of the sand, the adjusted delay damage is $80,969.

## IV. *Liability for Replacement Sand*

In addition to finding that Fuller was liable to Hoffman for delay damages, Judge Leighton found Fuller liable for the cost of replacement sand and awarded $94,-650. On review of the record we hold that this liability finding is clearly erroneous.

■ Judge Leighton found Fuller liable for the replacement sand on the extra-work test. The first prong of the five-part extra-work test is that the work lie outside the scope of the contractual promises. *Mayer Paving & Asphalt Co.,* 48 Ill.App.3d at 76–77, 8 Ill.Dec. at 125, 65 N.E.2d at 363 (1st Dist.1977). This is nothing more than another way of saying that the party seeking extra pay provide extra work.[9] Judge Leighton held that Hoffman did extra work when it supplied backfill sand for the CCOM project from the Brain Research excavation project. Judge Leighton appears to have construed the Subcontract as giving Hoffman an absolute right to use the excavated material as backfill and imposing the risk that the excavated material might not be usable on Fuller. This finding is not in accord with the express terms of the Subcontract and is therefore clearly erroneous.

Article I of the Subcontract provides that Hoffman is responsible for furnishing backfill material. Paragraph 2F18 of the specifications permits Hoffman to use the

---

**9.** The other four parts of the test are: (2) the party paying for the extras must order them; (3) the party paying for the extras agreed to pay either by his words or conduct; (4) the party seeking payment must not voluntarily furnish the extras; and (5) the necessity of the extras must not be caused by any default of the party seeking payment. *Mayer Paving & Asphalt Co.,* 8 Ill.Dec. at 125, 65 N.E.2d at 363 (1st Dist. 1977).

excavated material below ten feet depth and extended to the clay level as backfill provided that it is comparable to clean sand. Finally, Paragraph 54 of Exhibit A permits Hoffman to stockpile the material if space is available at the site, but requires Hoffman to incur the cost of removing the stockpiled material from the site should it become necessary. In brief, the Subcontract, its specifications, and its appendix place ultimate responsibility for obtaining, moving, and storing the backfill sand on Hoffman. Although Paragraph 2F18 of the specifications gives Hoffman a right to use certain portions of the excavated material as backfill and to stockpile that excavated material at the job site, it made this right contingent in part upon the availability of space on the job site. As things turned out, this contingency did not come to pass (*i.e.*, there was no space on the site for safe storage) and under the terms of Paragraph 54 of Exhibit A Fuller rightfully demanded that Hoffman move the stockpiled sand. Any costs Hoffman may have incurred consequent to relocating the sand constituted part of the risk it knowingly assumed upon signing the Subcontract. We therefore hold that in moving the sand from the job site and later from the alternative storage site and in providing replacement sand from the Brain Research project Hoffman did no more than it was obligated to do under the terms of the Subcontract; the first prong of the extra work test is not satisfied.

Nor does either waiver or modification theory support a finding that Fuller is liable for the cost of the replacement sand. Although Judge Leighton did not make specific findings on the applicability of these two theories to the backfill sand issue we need not remand again because his factual findings make clear that neither theory supports finding Fuller liable for the replacement sand.

Waiver is foreclosed because Fuller did not *voluntarily* give up its contractual right to impose the risk of storing, moving and obtaining backfill sand on Hoffman. Although Fuller promised to pay for replacement sand for the backfill and the promise was inconsistent with his known contractual right to refuse to assume this cost, this promise was made in response to Hoffman's initial refusal to remove the sand from the job site and later its refusal to remove the sand from the secondary storage location. Such a promise given in response to a threatened breach of contract is not voluntary and therefore cannot ground a finding of waiver. *Cf. Michel v. Efferson*, 65 So.2d at 119–20 (taking possession of a defective home is not a voluntary waiver of right to insist that defects be fixed or the price reduced); *Mayhew & Isbell Lumber Co.*, 216 S.W. at 233 (accepting crates for holding, harvesting, and selling onions which were delivered late is not voluntary waiver of right to insist on timely delivery where refusing delivery would only have increased damages).

Nor does modification theory support granting Hoffman recovery for the sand. A modification of a contract is a change in one or more respects which introduces new elements into the details of the contract, cancels some of them, but leaves the general purpose and effect undisturbed. *Hartwig Transit, Inc. v. Menalascino*, 113 Ill.App.3d 165, 170, 68 Ill.Dec. 796, 800, 446 N.E.2d 1193, 1197 (1st Dist. 1983). A valid modification must meet all the criteria essential for a valid contract: offer, acceptance, and consideration. *Scutt v. LaSalle County Board*, 97 Ill.App.3d 181, 185, 53 Ill.Dec. 21, 24–25, 423 N.E.2d 213, 216–17 (3d Dist.1981). In this case no valid consideration passed from Hoffman to Fuller. Under the express terms of the Subcontract, Appendix, and Specifications Hoffman was obligated to furnish the backfill sand and to bear the risk that storage space might not be available on the site. *See supra* p. 201. Hoffman's refusal to move the sand from the job site and later from the secondary storage location unless Fuller promised additional payment constituted a threatened breach of its contractual obligation. Under the preexisting duty rule, agreement to do what one is contractually obligated to do is not valid consideration. *See W.H. Lyman Con-*

*struction Co. v. The Village of Gurnee,* 131 Ill.App.3d 87, 94, 86 Ill.Dec. 276, 282, 475 N.E.2d 273, 279 (2d Dist.1985); Calimari & Perillo, *Contract* 120–23 (West 1970). Absent valid consideration there can be no modification.

Finding that the record does not support recovery for Hoffman for the sand on the extra work, waiver, or modification theories we reverse Judge Leighton's holding that Fuller is liable to Hoffman for the value of the replacement sand.

## V. *Conclusion*

In summary, we AFFIRM Judge Leighton's finding that Fuller is liable to Hoffman for the costs Hoffman incurred consequent to the delay from November 9, 1973, to August 7, 1974, but REVERSE his finding that Fuller is liable for the cost of the replacement sand. We also add $9,000 to the delay award to account for a $9,000 credit Fuller erroneously received for Hoffman's sale of sand and subtract $13,570 to reflect the Power back-charge for which Fuller was erroneously charged and the arithmetic error. Accordingly, we reduce Judge Leighton's total damage award of $180,189 by $99,220 [$94,650 erroneously allowed for cost of replacement sand liability and $4,570 erroneously allowed for delay cost liability *i.e.,* $13,500 (back-charge) plus $70 (arithmetic error) minus $9,000 (credit for sale of sand)] and order Fuller to pay Hoffman $80,969.[10]

---

**10.** The calculation of the adjusted damage award is summarized in schedule format below:

| | | | |
|---|---|---|---|
| Judge Leighton's Total Damage Award | | | $180,189 |
| Cost of Replacement Sand Erroneously Allowed | ($94,650) | | |
| Power Back-Charge | ($13,500) | | |
| Arithmetic Error | (70) | | |
| Credit for Sale of Sand | 9,000 | | |
| Total Erroneously Allowed for Delay Cost | | (4,570) | |
| Total Erroneously Allowed | | | (99,220) |
| Adjusted Damage Award | | | $80,969 |